[Crim. No. 8985.   In Bank.   May 23, 1966.]

In re RAMON J. GOMEZ on Habeas Corpus.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Ramon J. Gomez, in pro. per., and Hadden W. Roth, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Jay S. Linderman and Robert R. Granucci, Deputy Attorneys General, for Respondent.

TRAYNOR, C. J.—In this proceeding petitioner challenges the revocation of his parole by the Adult Authority. He was convicted in December 1957 of ''the infamous crime against nature'' (Pen. Code, § 286) and sentenced to the term prescribed by law. He was paroled on June 18, 1963. On July 16, 1964, his parole was cancelled because of his (1) ''committing the crime of burglary'' and (2) ''failing to cooperate with his Parole Agent, and by his behavior and attitude not justifying the opportunity granted him by parole by: (a) Refusing to take the advice and counsel of his Parole Agent.'' On October 19, 1964, following a hearing before the Adult Authority, petitioner was found guilty of both charges and his parole was revoked. A subsequent hearing was held on March 24, 1965, ''to review the parole violation charges.'' The Adult Authority concluded that petitioner's parole had been properly revoked and placed his case on its August calendar to consider redetermination of his sentence. On August 18, 1965, it refixed petitioner's term at 10½ years. Meanwhile, on May 19, 1965, petitioner filed a petition for a writ of habeas corpus in this court alleging that the Adult Authority relied on an uncorroborated, involuntary confession to supply the good cause required to revoke parole. (Pen. Code, § 3063.) On July 8, 1965, we issued an order to show cause and thereafter appointed a referee to take evidence and make findings on the following questions: (1) Was a confession introduced in the parole revocation hearing? If so, was it obtained in the manner alleged by petitioner? (2) Did petitioner have an opportunity to contest the allegations against him at the hearing before the Adult Authority? The reference hearing was held and findings of fact were submitted by the referee, the Honorable Thomas P. White.

From the record of the reference hearing it appears that

while on parole in May 1964 petitioner was arrested by the Whittier police on suspicion of committing burglary. Although no formal charges were filed against petitioner, he was transferred to the Los Angeles County jail and held there for approximately three months as a parole violator. He had several discussions with his parole officer in the Whittier and Los Angeles jails, but at no time admitted to the parole officer any involvement in the burglary for which he was arrested.

Petitioner testified that his sister had talked to his parole officer, who told her that it would help petitioner to have his parole reinstated if he would cooperate by submitting to a psychiatric examination to be arranged by the parole officer. Petitioner agreed to submit to an examination by Dr. James E. Miles, Staff Psychiatrist for the State Department of Corrections. He testified that he confessed to having committed the burglary and gave Dr. Miles a fabricated psychological reason for the crime. Thereafter he also admitted to Parole Agent Angel Ramirez at the Los Angeles jail that he was involved in the alleged burglary. After this confession, petitioner's parole was cancelled and he was returned to San Quentin, where he told Correctional Counselor Michael Basten that he had committed the alleged burglary. He testified that all of these confessions were false and that he made the confessions to Dr. Miles and Mr. Ramirez because he believed from what his parole officer had told his sister and his experience with correctional officials that if he confessed his sins and gave "psychological support" his chances for readmission to parole would be increased. According to petitioner, the confession to Mr. Basten at San Quentin was given after petitioner concluded that the revocation was probably going to take effect and that his chances for readmission to parole would be enhanced by a confession combined with a psychological motive. The Adult Authority relied on the confession to Mr. Basten at the October 1964 revocation hearing.

Although it is undisputed that petitioner's parole officer urged him both directly and through his sister to cooperate and to take a lie detector test and stated that by so doing petitioner might improve his chances of remaining on parole, the parole officer did not tell petitioner that those chances would be improved if he confessed or that his parole would be revoked if he did not. We agree with the referee's finding that petitioner confessed because he believed it would improve his chances for readmission to parole. We also agree with the referee's finding that petitioner's confessions were

not involuntary. Whatever their motivation, his confessions did not result from any improper pressure. He had been lawfully arrested for allegedly committing a burglary. In discharge of the parole officer's obligation to protect the interests of both petitioner and the public, it was entirely proper for the officer to confront petitioner squarely with the predicament he was in and to give him an opportunity to exculpate himself if he could. Thus, there was no improper conduct that would taint the confession later given to Mr. Basten at San Quentin.

■ Although it is settled that the Adult Authority may suspend, cancel, or revoke a parole for good cause without notice or hearing (see *In re McLain* (1960) 55 Cal.2d 78, 84-85 [9 Cal.Rptr. 824, 357 P.2d 1080] ; *People* v. *Dorado* (1965) 62 Cal.2d 338, 359 [42 Cal.Rptr. 169, 398 P.2d 361] ; Pen. Code, § 3060), petitioner contends that if the Adult Authority elects to hold a parole revocation hearing, it must afford the parolee a reasonable opportunity to refute the charges against him. We need not pass on this contention for we agree with the referee's finding that at the second revocation hearing in March 1965, petitioner "was afforded every opportunity to answer the charges against him."[1]

The official who conducted petitioner's October 1964 revocation hearing had no independent recollection of it but testified that he would listen to whatever a parolee had to say that was relevant to the alleged violation. No detailed minutes of that hearing were kept. After the October 1964 hearing, however, petitioner's sister wrote the Adult Authority claiming that petitioner's parole had been unjustly revoked, and in March 1965 the Adult Authority held another hearing to review the parole violation charges. At that hearing petitioner was allowed to present a defense and supplied the Adult Authority with the name and address of an alibi witness. Although the Adult Authority did not obtain a statement from that witness, it assumed that the witness would support petitioner's alibi. The Adult Authority was not compelled to believe the alibi witness, and after considering all the evidence concluded that

---

[1]Since the existence of good cause to revoke a parole may be challenged on habeas corpus (*In re McLain* (1960) 55 Cal.2d 78 [9 Cal.Rptr. 824, 357 P.2d 1080]), affording parolees notice and hearing and a reasonable opportunity to rebut the charges against them before final revocation of parole will not only discourage needless judicial review but will impart a sense of fairness in the state's dealings with its parolees. The Adult Authority ordinarily affords notice and hearing before revoking paroles, and the record herein shows that it has undertaken to improve the records kept of revocation proceedings.

there was sufficient reason not to reverse the determination made at the October 1964 hearing. The Adult Authority, having before it not only petitioner's confession, but other evidence of his guilt,[2] could properly resolve the conflict in the evidence against him.

Since the record establishes that the Adult Authority had good cause to revoke petitioner's parole on the ground that he had committed a burglary, we need not determine whether his refusal to take a lie detector test was such a failure to cooperate with his parole officer as to constitute good cause to revoke his parole.

The order to show cause is discharged and the petition for a writ of habeas corpus is denied.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

---

[2] About 11 p.m. on May 25, 1964, Mrs. Alyce Fugitt answered her doorbell and saw a male Mexican answering petitioner's description at the door. The man said that he was lost and was looking for the 200 block of Midway (two blocks from Mrs. Fugitt's home and the block in which petitioner lived). After she told him how to get there, he insisted on coming inside to spend the night. Mrs. Fugitt refused to admit him, closed the door, and returned to her living room. At 1:15 a.m. she entered the front bedroom where she noticed something protruding from beneath her bed. She pushed the object with her foot and found it was a man's shoulder. She ran to a neighbor's house and called the police. Her neighbor saw a man answering petitioner's description leave Mrs. Fugitt's house and disappear. When the police arrived they found an illegally parked car three houses from Mrs. Fugitt's house. It was petitioner's car. A check was made at petitioner's house, but the officers were told that he was still out with an unknown girl friend. Petitioner was arrested at 8:30 a.m. as he left his house. He would admit nothing and refused to take a polygraph test. He insisted he was at his girl friend's house on the night in question, but he could not remember her name and address.