266 Cal.App.2d 143 (1968)
In re LEROY ELDRIDGE CLEAVER on Habeas Corpus.
Crim. No. 7331. 
California Court of Appeals. First Dist., Div. One. 
Sept. 27, 1968.
 Thomas C. Lynch, Attorney General, Edward P. O'Brien and John P. Oakes, Deputy Attorneys General, for Appellant in Crim. No. 7331 and for Petitioner in Civ. No. 25919.
 Garry, Dreyfus, McTernan & Brotsky, Charles R. Garry, Benjamin Dreyfus and Francis J. McTernan for Respondent in Crim. No. 7331 and for Real Party in Interest in Civ. Nos. 25818 and 25919.
 Marshall W. Krause and Paul N. Halvonik as Amici Curiae on behalf of Respondent in Crim. 7331.
 Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Edward P. O'Brien, Deputy Attorney General, for Petitioner in Civ. No. 25818.
 No appearance for Respondent in Civ. Nos. 25818 and 25919.
 SIMS, J.
 The People have appealed (Pen. Code, 1506) from an order granting petitioner, Leroy Eldridge Cleaver, a writ of habeas corpus which released him from prison and reinstated him on parole. (1 Crim. 7331.) The California Adult Authority, as respondent in proceedings taken by the petitioner to find it in contempt and to enjoin and restrain it from thereafter holding a parole violation hearing, has applied in original proceedings in this court for writs of prohibition and mandate to restrain the trial court from taking further action in those proceedings, and to order the trial court to set aside the orders it has made pursuant to the application of petitioner, as real party in interest. (1 Civ. 25818 and 1 Civ. 25919.) Return on each of the latter applications was set for the time fixed for argument on the appeal, and the matters have been consolidated for hearing.
 The questions to be reviewed in the original proceedings involve the validity of the order granting the writ, and further discussion is deferred to follow the resolution of that issue. The People contend that the trial court exceeded the proper scope of inquiry in reviewing the action of the Adult *147 Authority, and that it erroneously determined that the Adult Authority did not have cause to cancel petitioner's parole. The petitioner, in support of the relief he has been granted, asserts that the trial court had power and authority to conduct the proceedings in the manner it did, and to make the order from which the appeal is taken. He also contends that the Adult Authority's practices and procedures, generally and as applied to petitioner in this case, violate constitutional guaranties of due process and equal protection. Underlying the respective contentions of the parties is the question of the nature of the action--stated as "parole cancelled"--taken by the Adult Authority. This question is examined, and the action is found to be in the nature of a suspension awaiting further hearing by the Adult Authority to determine the question of revocation. The scope of review of such action is defined, and it is determined that the court exceeded its authority in attempting to hold a factual hearing on the merits of the charges made; that the practices and procedures of the Adult Authority as applied to petitioner in "cancelling" his parole did not violate any of his constitutional rights; and that the cancellation was predicated upon proper cause. No opinion is necessary or expressed upon the question of whether a hearing is necessary before petitioner's parole may be revoked or, if so, the requisites of such hearing. The order must be reversed. In view of the decision on the merits of the appeal, the People are entitled to the relief sought in the original proceedings.
 Statement of Facts
 Petitioner, Leroy Eldridge Cleaver, was convicted on March 11, 1958, on two counts of assault with intent to commit murder in violation of Penal Code section 217, and three counts of assault with a deadly weapon in violation of Penal Code section 245, with an admitted prior conviction of possession of a narcotic other than marijuana in violation of section 11500 of the Health and Safety Code.petitioner was thereafter sentenced to the state prison for the term prescribed by law (one to fourteen years for section 217, and not exceeding ten years for section 245), said sentences to run concurrently. On November 28, 1966, the terms were set by the Adult Authority at thirteen years for the assault with intent to commit murder counts, and ten years for the assault with a deadly weapon counts.petitioner's release upon an approved parole plan was authorized, and he was released on parole December 12, 1966, with a discharge date of March 20, 1971. *148
 On April 7, 1968, the Chief, Parole and Community Services Division of the Department of Corrections (see Pen. Code, 2399-2403) made the following report and recommendation to the Adult Authority:
 "Circumstances:"
 "Subject arrested by the Oakland Police Department on 6 April 1968 for violation of section 245 b PC (Aslt. on Peace Officer)."
 "At approximately 2109 hours, 6 April 1968, Officers Jensen and Darnel, OPD, radioed stating we are having a gun battle at 28th and Magnolia. Numerous units responded to the scene. An extensive gun battle ensued, lasting approx. 1 hour and 21 minutes with approx. two thousand shots being fired. The encounter resulted in the residence at 1218, 28th, catching on fire from a tear gas grenade. The following suspects surrendered: [there follow the names of eight individuals other than petitioner's]. All of these suspects have tentatively been identified as members of the Black Panther Party."
 "Subject was observed and identified by Sgt. E. Hilliard, OPD Vice Control Division, as the individual, at time of surrender, throwing out a carbine rifle and an automatic pistol."
 "The incident was unprovoked. The Oakland officer were [sic] routinely checking out a suspicious person near a white Ford bearing Florida license plates when they were fired upon by the foregoing individuals."
 "Charges:"
 "1. Leroy Cleaver violated Condition 8 of his Conditions of Parole by his association with individual[s] of bad reputation."
 "2. Leroy Cleaver violated Condition 7 of his Conditions of Parole by his control and possession of firearms."
 In accordance with the recommendation contained in the report, the Adult Authority forthwith cancelled petitioner's parole, ordered his return to prison, and refixed his term at maximum.
 A second report dated April 10, 1968, was thereafter presented to the Adult Authority. It states as follows:
 "Reason For Report: "On 3/22/68 Eldridge Cleaver was given a one week out of state visit permit to attend TV shows in Chicago and New York, S to leave California on 3/24/68 and to return to California on 3/30/68. At the time Cleaver was given the travel permit he was instructed by the Unit Supervisor, Issac Rivers, to report to the District Office immediately *149 on his return to California and no later than April 1, 1968. S did not report as instructed and was not heard from until his arrest in Oakland, California on 4/6/68. An attempt was made to contact S on 4/4/68 to ascertain why he had not reported, but no answer was received at his residence.
 "On 4/6/68 at approximately 10:30 PM Cleaver along with seven other men (tentatively identified as Black Panthers), was arrested in Oakland, California by officers of the Oakland Police Dept. The arrest came after a 90 minute gun battle in which two police officers were wounded, one suspect, Bobby James Hutton, was killed and two suspects were wounded. Cleaver was one of the wounded. According to the Police the altercation started when two police officers were fired upon when they stopped to investigate a suspicious person. Cleaver was positively identified by Sgt. E. Hilliard of the Oakland Police Dept. as having in his possession a carbine rifle and an automatic pistol at the time of surrender. The Oakland PD advises that the Alameda County District Attorney has issued a complaint alleging violation of Section 217 PC (Assault w/intend to commit Murder) against Cleaver and the others arrested. The PD also advises additional charges are pending. Along with Cleaver and the several others at the time of arrest was Warren Wells who has a police record dating back until 1960. He was last released from jail on February 15, 1968. Also arrested with Cleaver was David Hilliard a "Captain" in the Black Panthers, who was charged with a misdemeanor firearms violation after a February 25 arrest. In addition, Bobby Hutton, the killed suspect, had a police record. As indicated, Cleaver was shot (in the leg) during the exchange of gun fire. He was taken to Highland Hospital for treatment and Oakland PD notified California Dept. of Correction's personnel. There was concern that other Black Panthers might attempt to liberate him since this was a night of national urban unrest following Dr. King's assassination. For this reason, CDC personnel transported Cleaver to San Quentin and shortly thereafter to CMF. Special Action was taken by the Adult Authority 4/7/68 to cancel parole."
 "Charges Specified:"
 "1. Leroy Eldridge Cleaver violated Condition 7 of the Conditions of Parole by having in his possesion and control firearms."
 "2. Leroy Eldridge Cleaver violated Condition 8 of the *150 Conditions of Parole by associating with individuals of bad reputation."
 "3. Leroy Eldridge Cleaver violated Condition 10 of the Conditions of Parole by failing to cooperate with his parole agent."
 "4. Leroy Eldridge Cleaver violated Condition 11 of the Conditions of Parole by failing to obey all municipal, county, state, and federal laws, ordinances, and orders; and failed to conduct himself as a good citizen." The recommendation that the action of April 7th be reaffirmed was adopted by the Adult Authority on April 12, 1968.
 On May 8, 1968, the Adult Authority served petitioner with a notice of complaint, to which was attached a copy of a report to the Adult Authority, dated April 29, 1968, specifying the first three charges which are set forth in the report of April 10, 1968. The content and effect of this notice are hereinafter discussed.
 On May 20, 1968, Cleaver filed his petition for a writ of habeas corpus in the superior court in the county in which he was imprisoned, alleging that he was "confined and restrained by reason of a purported cancellation of his parole effected by the Adult Authority on April 7, 1968." He alleged, "2. The confinement and restraint of petitioner are illegal and void upon these grounds:"
 "a. The said cancellation of his parole was not made for cause, as required by statute;"
 "b. The said cancellation was made for asserted violation by petitioner of unconstitutional conditions of parole, as hereinafter set forth;"
 "c. The imposition of unconstitutional conditions of parole, and cancellation of parole for violation of such unconstitutional conditions, and without cause as required by statute, deprive petitioner of his liberty without due process of law in contravention of the Fifth and Fourteenth Amendments to the United States Constitution."
 After reciting an alleged history of persecution by the Department of Corrections and the Adult Authority because of his race and his political activities, he states that the unconstitutional conditions of parole consisted of "denying him the right to speak or to write any criticism of state, county or public officials of California"; and that the Adult Authority "on April 7, 1968, unlawfully cancelled petitioner's parole for asserted failure on the part of petitioner to adhere to said conditions." *151
 He acknowledges receipt of the notice of complaint and a copy of the report attached to it. He alleges he is innocent of said charges and that the Adult Authority is threatening to revoke his parole for alleged breach of the unconstitutional conditions. He, nevertheless, particularly alleges that he has been indicted in Alameda County on charges of assault to commit murder in violation of section 217 of the Penal Code, and that the action is pending.
 Further complaints relate to the threat of the Adult Authority to refix his term at maximum and alleged official interference with his right to consult with counsel.
 Apparently an order to show cause issued on the petition. A return was filed which sets up petitioner's conviction, the action taken by the Adult Authority to fix his term and period of parole, and the action taken by the Adult Authority to cancel his parole. On the return day, over the objections of the People that the questions raised were questions of law, the court received testimony in support of the petition.
 The petitioner testified covering his residence, marital status and his employment since he was released on parole. He testified at length with respect to his alleged persecution by the Adult Authority and by the prison administration because of his political and religious views and his speech and activities in connection with his beliefs. [fn. 1] He stated he was told that when paroled he "was not to write anything attacking or criticizing any big California politician or the Department of Corrections," or "about prisons or [his] experiences in prison." He testified that his parole officer stated he was very proud of him up until the night he got into difficulties, and that the officer felt there was no significance in the charge of noncooperation because of the alleged failure to report back. [fn. 2]
 He also testified concerning the charge that he was unable to properly consult with his counsel. This testimony was buttressed by that from associate counsel who narrated the restrictions and regulations he encountered in interviewing his client at the prison.
 A former employer testified that petitioner's reputation for truth, honesty and veracity was unimpeachable. *152
 No witnesses were called by the People. They relied upon the reports on which the Adult Authority acted.
 On June 11, 1968, the court made and entered its "Memorandum and Order Granting Writ of Habeas Corpus" in which it concluded, "It is Ordered that petitioner be released from prison forthwith and reinstated on parole." This appeal ensued.
 Nature of the Proceedings Reviewed
 [1] Penal Code section 3060 provides: "The Adult Authority shall have full power to suspend, cancel or revoke any parole without notice, and to order returned to prison any prisoner upon parole. The written order of any member of the Adult Authority shall be a sufficient warrant for any peace or prison officer to return to actual custody any conditionally released or paroled prisoner." (Italics added.)
 Section 3063 reads: "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole."
 The discrepancy in the terminology used by the Legislature to describe actions which the Adult Authority is authorized to take has caused confusion in this case. The recommendations to and the orders of the Adult Authority not only refer to cancellation of petitioner's parole, but the report forms used on April 10th and April 29th reveal that the printed word "suspended" was deleted and "cancelled" substituted in typewriting.
 Petitioner contends that the word "cancel" is synonymous with "revoke," and that the proceedings taken by the Adult Authority must be weighed and reviewed as though decisive and irrevocable action had been taken. The People assert that pleading, practice and proof demanded that the action taken by the Adult Authority in this case merely constituted a suspension of parole pending further investigation and action by the Adult Authority.
 The dictionary and ample precedent semantically support the position of petitioner. [fn. 3] It is unnecessary, however, to *153 determine the meaning of "cancel" in the abstract, or even, as particularly used in the statute. (See In re Clark (1967) 254 Cal.App.2d 1, fn. 1 [61 Cal.Rptr. 902].) For examples of the use of "cancel" and its participial and nominative forms in parole matters, see, In re Gomez (1966) 64 Cal.2d 591 at p. 592 [51 Cal.Rptr. 97, 414 P.2d 33]; In re Hall (1965) 63 Cal.2d 115 at p. 116 [45 Cal.Rptr. 133, 403 P.2d 389]; In re Payton (1946) 28 Cal.2d 194 at p. 196 [169 P.2d 361]; In re Etie (1946) 27 Cal.2d 753 [167 P.2d 203].) The pleading and proof in this case, and practices, which have been recognized and authorized by the courts of this state, demonstrate that the action taken in this case was preliminary to further proceedings regardless of the term used to describe it.
 In his petition petitioner acknowledges, "On May 8, 1968, the Adult Authority served petitioner with a Notice of Complaint, attaching a copy of asserted parole violation charges ... and notifying petitioner that a hearing would be held on an unscheduled date regarding revocation of petitioner's parole. ... The Adult Authority threatens to revoke petitioner's parole ... and unlawfully confines petitioner and restrains him of his liberty pending the said unscheduled hearing." (Italics added.) The copy of the "Notice of Complaint" attached to the petition reads in part, "1. You are hereby notified that a written complaint has been filed against you. A copy of the complaint is attached hereto or the charge(s) against you listed hereon. 2. A hearing on the charge(s) will be held at Unscheduled. ... 3. At that time, the Adult Authority or its representative committee of prison officials, as provided by the California Penal Code and Adult Authority Resolutions, will conduct a hearing to determine your guilt or innocence, and when applicable, a determination will be made regarding: X(a) Revocation of parole (Sec. 3060 P.C.) (b) ... (c) ..." The charges were the first three charges listed in the report dated April 10, 1968.
 In the points and authorities filed in opposition to the petition the People outlined the procedure followed when a parolee was charged with a violation of parole. They asserted that both suspension and cancellation were only preliminary *154 determinations and that whether there is cause to revoke parole is determined only after the prisoner personally appears before the Adult Authority at a hearing. They sought to justify the action which had been taken on the basis of precedents which uphold the right of the Adult Authority to suspend parole and refix the prisoner's term at maximum pending ultimate disposition of new charges. (See In re Brown (1967) 67 Cal.2d 339, 341-342 [62 Cal.Rptr. 6, 431 P.2d 630]; In re Hall, supra, 63 Cal.2d 115, 117; In re McLain (1960) 55 Cal.2d 78, 85 [9 Cal.Rptr. 824, 357 P.2d 1080]; In re Payton, supra, 28 Cal.2d 194, 197; In re Etie, supra, 27 Cal.2d 753, 755-758; and In re Bunker (1967) 252 Cal.App.2d 297, 301 [60 Cal.Rptr. 344].)
 Following the entry of the court's order on the application for the writ of habeas corpus, the Adult Authority served petitioner with a letter dated June 28, 1968, directing him to appear for a "parole violation hearing" on July 8, 1968 on all four charges, as listed in a copy of a report dated June 14, 1968 in which "cancelled" was again substituted for "suspended." This notice led to petitioner's application to the trial court for an order to show cause and the issuance of such an order. In turn the Authority sought relief by application to this court for an original writ (1 Civ. 25818). After hearing on the order to show cause, the trial court made its order enjoining and restraining the Adult Authority from having a further hearing on any of the charges in question and from suspending, cancelling or revoking petitioner's parole upon any of such charges. The Authority then applied again for a writ to nullify the action of the trial court. (1 Civ. 25919.)
 In re Brown, supra, in recognizing the procedure which the Adult Authority has attempted to follow with respect to petitioner, states: "Since an order for suspension of parole is preliminary in nature (In re Hall, supra, 63 Cal.2d at p. 117), a less formal and full showing will suffice to sustain it than that required for the final revocation of parole. This distinction permits the Adult Authority to suspend parole on the basis of a belief that good cause exists and to take the parolee into custody pending ultimate disposition of the cause. (See In re McLain (1960) 55 Cal.2d 78, 85 [9 Cal.Rptr. 824, 357 P.2d 1080].)" (67 Cal.2d at pp. 341-342.)
 Petitioner recognizes that the Adult Authority is empowered to so act, but claims that in this case the striking of the word "suspended" and the substitution of the term "cancelled" in the report forms of the Adult Authority demonstrates *155 an intention to accomplish more than a mere suspension of petitioner's parole. [fn. 4] It is clear, however, that since the report (April 29, 1968), a copy of which was sent to petitioner, was accompanied by a notice that the question under consideration was "Revocation of parole," that the cancellation was something less, and was tentative in nature.
 Petitioner and amicus curiae have suggested that the delay in holding an "Unscheduled" hearing justified the court's action in attempting to determine the merits of the charges. The trial court in the memorandum accompanying the order indicated that it recognized that it might not be appropriate to intervene until the criminal proceedings were resolved, or at least until the Adult Authority had held a hearing. Acknowledgedly influenced by its views on the merits, it plunged ahead on the basis that the two months' delay in granting petitioner a hearing was unconscionable. No precedent for by- passing established administrative procedures has been referred to. If there is undue or unexplained delay in taking final action on pending charges of violation of parole the remedy would appear to be by an order commanding such a hearing, not by usurpation of the jurisdiction of the administrative body which is authorized to hold the hearing. (See Roberts v. Duffy (1914) 167 Cal. 629, 640-641 [140 P.2d 60]; and In re Faucette (1967) 253 Cal.App.2d 338, 340 and 346 [61 Cal.Rptr. 97].)
 It is concluded that regardless of its denomination, the action of the Adult Authority, which the trial court and this court are called upon to review, is established by the record to be a retaking of the petitioner into custody pending ultimate disposition of the charges of parole violation, and must be evaluated accordingly. The Legislature and Adult Authority should heed the admonition expressed in another context in Greif v. Dullea (1944) 66 Cal.App.2d 986, 1001 [153 P.2d 581], "The use of the word 'cancel' was ill advised and unfortunate in that it has afforded ostensible ground for this litigation."
 Scope of Review
 Preliminarily the scope of the charges involved must be *156 ascertained. The petition refers to and includes a copy of the report dated April 29, 1968, which does not include the fourth charge contained in the April 10th report, namely, the violation of Condition 11 "by failing to obey all municipal, county, state and federal laws, ordinances, and orders, and [failure] to conduct himself as a good citizen." The petition did expressly allege that a criminal action was pending under an indictment in Alameda County which charged petitioner with three counts of attempted murder in violation of section 217 of the Penal Code. He alleged that insofar as the charges were included in an alleged violation of Condition 11 he was innocent of them.
 The People's return set up the arrest and the criminal charges against petitioner as they were referred to in the reports of April 7th and 10th. They were entitled to set up any authority or cause for the petitioner's imprisonment and restraint. (See Pen. Code, 1480, subds. 2 and 3.)
 The charges of possession and control of firearms and association with individuals of bad reputation were related to the criminal action. The petitioner testified with respect to these charges. He denied possession of any weapons. He admitted he saw weapons, and explained that he merely passed a weapon out a window in response to a police command. He acknowledged association with some of the individuals mentioned, but denied that he had been told that any had criminal records. When questioned further about the events of the evening he was arrested, objection was made and sustained because of the pending criminal proceedings.
 Nevertheless, the court noted the charge had been made. It undertook to pass upon the merits of the charge. It concluded in its memorandum "... Cleaver's only handling of a firearm (the rifle) was in obedience to a police command. He did not handle a hand gun at all. There was nothing one way or the other to show a conspiracy or a situation calling for the application of the doctrine of aiding and abetting. Hence, nothing supported either the possession of a firearm or the assault charge." The court also observed, "There is nothing to indicate why it was deemed necessary to cancel his parole before his trial on the pending criminal charges of which he is presumed innocent."
 The court's order reinstating defendant on parole could not have been made without expressly or impliedly finding that the pendency of the criminal charges was an insufficient ground to warrant retaking petitioner into custody. The court so construed its action in issuing an order to show cause (see *157 1 Civ. 25818), and ultimately issued a final order enjoining the Adult Authority from holding a hearing on this charge as well as the other three involved. (1 Civ. 25919.) It is concluded that the validity of the cancellation under all four charges is at issue.
 The problem is now simplified. Section 3063 prescribes, "No parole shall be suspended ... without cause, which cause must be stated in the order suspending or revoking the parole." (See In re Brown, supra, 67 Cal.2d 339, 341; People v. Dorado (1965) 62 Cal.2d 338, 359 [42 Cal.Rptr. 169, 398 P.2d 361]; In re McLain, supra, 55 Cal.2d 78, 84; In re Payton, supra, 28 Cal.2d 194, 196; In re Conroy (1953) 117 Cal.App.2d 194, 198 [225 P.2d 102]; In re O'Malley (1950) 101 Cal.App.2d 80, 83 [224 P.2d 488]; and In re Payton (1945) 67 Cal.App.2d 835, 837 [155 P.2d 837].) Any suggestion in the earlier Payton case that the cause could not be shown by proper reference in the order is disapproved in subsequent cases. (In re Payton, supra, 28 Cal.2d 194, 196-197; and In re Etie, supra, 27 Cal.2d 753, 758.)
 This case is governed by In re Payton, supra, 28 Cal.2d 194 which overruled a contention that no cause for suspension was properly set forth. [2] "The contention is answered by the decision of this court in In re Etie, 27 Cal.2d 753 [167 P.2d 203]. Three propositions were necessarily determined by that decision and are controlling here, viz.: (1) That a charge of violation of parole conditions based on an official accusation of a violation of a provision of the Penal Code is proper ground for suspending parole. [3] As there determined the order is preliminary in nature, 'pending investigation' and the outcome of the prosecution of the charge. Its finality is determined by the appropriate board or authority when the truth of the charge is shown by conviction and an order of affirmance is made. If the prosecution culminate in acquittal, and no other charges support the suspension, it is to be assumed that the proper authority will vacate the preliminary order suspending parole. [4] (2) That such a preliminary order of suspension is in substantial compliance with section 3063 of the Penal Code requiring that the cause for suspension be stated in the order, when, as here, the order shows that the cause of suspension consisted of violations of the terms and conditions of parole and refers to a report on file specifying the facts in detail." (28 Cal.2d at pp. 196-197.) In In re Brown, supra, the court stated: "When defendant was first charged with robbery, or after his conviction, the Adult *158 Authority, in order to assure that delays in court proceedings would not deprive it of jurisdiction over defendant, had cause to suspend his parole and refix his term at maximum." (67 Cal.2d at p. 341; and see additional quotation from pp. 341-342 which is set forth above.) In re McLain, supra, recognizes that "cause" may be shown by the report. The court stated, "When the order of revocation discloses on its face that it was based on the legal and proper findings of some other person or body authorized by law to make such findings, then such findings may constitute the 'cause' for the order of revocation of the Adult Authority. In such event there is substantial compliance with the requirements of the code section. [Citations.]" (55 Cal.2d 78, 87. See also People v. Goss (1961) 193 Cal.App.2d 720, 726 [14 Cal.Rptr. 569]; and In re Conroy, supra, 117 Cal.App.2d 194, 198.)
 [5] To allow inquiry into the merits of a charge of parole violation pending the hearing of a criminal case on which it is based would produce a chaotic situation. A procedure has been presented to test the question of whether there is reasonable or probable cause to support an indictment or information. (Pen. Code, 995-999a.) If any superior court, in a jurisdiction where a prisoner whose parole has been suspended or "cancelled" is confined pending further investigation, may also pass on the question of probable cause there would be obvious conflicts in jurisdiction. The circumstances, if any, under which a prisoner would be permitted to collaterally attack the pending criminal proceedings by review of the suspension of his parole would have to be extraordinary and do not exist in this case. Amicus Curiae so conceded.
 Charges of parole violation which are not predicated upon a pending criminal charge do not present the same problem. Nevertheless, as pointed out in In re Gomez, "... affording parolees notice and hearing and a reasonable opportunity to rebut charges against them before final revocation of parole will ... discourage needless judicial review. ..." (64 Cal.2d at p. 594, fn. 1.) No policy indicates that orderly administrative procedures, prescribed by law, should be overturned by giving the prisoner whose parole is revoked an immediate judicial review of the merits of the charges before the Adult Authority has acted. If there are unreasonable delays, the remedy, as noted above, should be by an order commanding the hearing.
 In this case each charge is documented in an official report.petitioner and the trial court, in disregarding the material in *159 the reports, misread People v. Dorado, supra, 62 Cal.2d 338. In Dorado, the opinion states: "A disputable presumption supports the conclusion that the minute entry on the certification of Adult Authority action correctly states the action taken by that body, including the fact that good cause existed for revocation of parole. (In re Smith (1949) 33 Cal.2d 797, 801 [205 P.2d 622]; Code Civ. Proc., 1963, subd. 15.) Defendant alleges no facts and submits no evidence to rebut such presumption; on the contrary, defendant testified at the trial that his parole was revoked when he surrendered himself for violating its terms by the use of narcotics. He stated then that at the narcotic treatment unit at Chino he 'got involved with somebody else and I stuck up for the guy and I got violated and sent to San Quentin.' The record manifests a good cause." (62 Cal.2d at p. 360; see also Evid. Code, 600, 601, 603, 605 and 664; and Witkin, Cal. Evidence, 217-222, pp. 197-202.) The People in this case did not rely merely upon the orders, but produced the reports on which they were based. Each report was evidence of cause for suspension.
 Petitioner has invited attention to cases in which evidence has been taken in connection with an attack on the action of the Adult Authority. (See In re Gomez, supra, 64 Cal.2d 591; In re Conroy, supra, 117 Cal.App.2d 194; and In re O'Malley, supra, 101 Cal.App.2d 80.) These cases are not controlling here. They involve review of final action by the Authority and not review of the grounds for returning a prisoner to prison pending further investigation.
 [6] It is concluded that the trial court erred in receiving evidence on the merits of the charges contained in the reports and orders of the Adult Authority, and in determining that there was no cause for cancelling petitioner's parole and returning him to prison.
 [7] Petitioner's claim, which he attempted to sustain by his own testimony, that there were unconstitutional conditions attached to his parole, and that his parole has been cancelled because he violated these conditions is not borne out by the record. If, because of his race or political views, there is bias or prejudice against petitioner which affects the truth of the charges which have been lodged against him, it may be presumed it can be shown at the proper time. The charges made are supported by reports which show facts giving rise to violation of established conditions of parole. Even if lodged with improper motives, that fact would not excuse the occurrence which gave rise to the breach. Although charity should be *160 extended to him who is sinned against, he is in the eyes of the law no less accountable for his own sins. Nor is one the less accountable because of his achievements and the prestige he enjoys among his followers.
 [8] "Inmates of state prisons do not have the usual array of federal and state constitutional rights guaranteed to non-incarcerated citizens. [Citations.] ... Although a parolee is not a prison inmate in the physical sense, he is constructively a prisoner under legal custody of the State Department of Corrections and may be returned to the prison walls without notice and hearing. (Pen. Code, 3056; In re Davis, 37 Cal.2d 872, 874 [236 P.2d 579]; In re Marzec, 25 Cal.2d 794, 797 [154 P.2d 873]; People v. Goss, 193 Cal.App.2d 720, 724 [14 Cal.Rptr. 569]; In re Dearo, 96 Cal.App.2d 141, 144 [214 P.2d 585]; see Comment, 28 So.Cal.L.Rev. 158-175.) In actual fact he moves about in free society, fettered by the conditions and restrictions of his parole. Thus his status differs somewhat from that of unreleased prisoners. To an extent not necessary to ascertain here, he may be able to assert constitutional guaranties and safeguards against arbitrary or oppressive official action. (See In re Jones, 57 Cal.2d 860, 862 [22 Cal.Rptr. 478, 372 P.2d 310].)" (People v. Hernandez (1964) 229 Cal.App.2d 143, 149 [40 Cal.Rptr. 100].) [fn. 5]
 In view of the conclusions concerning the nature of the action reviewed and the scope of the review of that action, this court does not reach the questions postulated upon review of an order revoking parole. No opinion is expressed concerning the right to a hearing, offered in any event in this case by the Adult Authority, or the procedural safeguards which must attend it. (See Pen. Code, 3060; In re Schoengarth (1967) 66 Cal.2d 295, 304 [57 Cal.Rptr. 600, 425 P.2d 200]; In re Gomez, supra, 64 Cal.2d 591, 594; People v. Dorado, supra, 62 Cal.2d 338, 359; In re McLain, supra, 55 Cal.2d 78, 85-86; In re Smith, supra, 33 Cal.2d 797, 804; and Fleischer v. Adult Authority (1962) 202 Cal.App.2d 44, 46-47 [20 Cal.Rptr. 603].) Mempa v. Rhay (1967) 389 U.S. 128 [19 L.Ed.2d *161 336, 88 S.Ct. 254], which extends to federal protection the California rule requiring the presence of counsel at the time of imposition of sentence after revocation of probation (see In re Turrieta (1960) 54 Cal.2d 816, 819 [8 Cal.Rptr. 737, 356 P.2d 681]), does not affect the instant case. The petitioner has been sentenced, the question remaining is the administrative one of determining the period for which and the manner in which his sentence should be served.
 Refixing Term
 [9] The petition also alleged that the Adult Authority threatens to refix his term at maximum. Since there was reasonable cause to suspend his parole, the Adult Authority was also authorized to refix his term. (In re Brown, supra, 67 Cal.2d 339, 341-342; In re Schoengarth, supra, at pp. 302 and 304; People v. Dorado, supra, at pp. 359 and 360; In re McLain, supra, at pp. 84-85 and 87; In re Smith, supra, at pp. 803-805; In re Etie, supra, 27 Cal.2d 753, 758-759; Fleischer v. Adult Authority, supra, at pp. 46-47.)
 Restraints on Consultation with Counsel
 Petitioner further complained that his right to consult with his counsel was unduly infringed by the actions of his custodians. (See In re Allison (1967) 66 Cal.2d 282, 286-287 [57 Cal.Rptr. 593, 425 P.2d 193]; In re Ferguson (1961) 55 Cal.2d 663, 676-678 [12 Cal.Rptr. 753, 361 P.2d 417]; In re Cathey (1961) 55 Cal.2d 679, 695-697 [12 Cal.Rptr. 762, 361 P.2d 426]; In re Chessman (1955) 44 Cal.2d 1, 9-10 [279 P.2d 24]; People v. Ray (1960) 181 Cal.App.2d 64, 69 [5 Cal.Rptr. 113]; In re Qualls (1943) 58 Cal.App.2d 330, 331-333 [136 P.2d 341]; In re Snyder (1923) 62 Cal.App. 697, 699-702 [217 P. 777]; and In re Rider (1920) 50 Cal.App. 797, 799-801 [195 P. 965].) The trial court took evidence on this issue, but in view of its order releasing the petitioner from custody, made no findings or order.
 The petitioner alleged "that confidential and privileged mail is censored, mail is unduly delayed rendering trial preparation burdensome, and petitioner's counsel has not been allowed to employ a dictating machine which is necessary for adequate preparation of the facts of a criminal case for trial." The release which petitioner secured by the order of the lower court, and the resulting freedom to consult with counsel may have rendered his complaints moot. (See In re Chessman, supra, 44 Cal.2d 1, 10.) No good purpose would be *162 served by remanding the cause for resolution of these issues. If and when any problem of interference arises in the future, it can be reviewed by a new application.
 Original Proceedings
 [10] In the post-judgment proceedings the court issued an order to show cause why the People and the Adult Authority should not be held in contempt of an order of June 12, 1968 which admitted petitioner to bail pending review of the order which released him from prison and reinstated his parole. On application of the Authority, an alternative writ of prohibition was issued, returnable at the same time as the hearing of the appeal (1 Civ. 25818). No reply has been made to this alternative writ. The alleged contempt was the Authority's intent to hold a hearing on the pending parole violation charges in order to determine whether petitioner's parole should be revoked. It is questionable whether contempt could be properly used under the circumstances of this case to interfere with the actions of an administrative body charged with the responsibility of the custody of the petitioning prisoner. In any event, the decision on the appeal indicates that a peremptory writ of prohibition should issue in the first original proceeding, absolutely and forever, restraining and prohibiting the respondent court from taking any further action or proceedings on that portion of the order to show cause issued July 5, 1968, which purports to initiate proceedings to hold the People and the Adult Authority in contempt of court.
 [11] A hearing was held on the order to show cause issued by the trial court insofar as it proposed to enjoin and restrain the Adult Authority from holding and conducting any parole violation hearing, and from suspending, cancelling, or revoking the petitioner's parole on any of the four original grounds. The court, following the hearing, enjoined and restrained the Adult Authority from so acting "pending decision of the appeal from this Court's order of June 11, 1968 granting a writ of habeas corpus herein, and until the return of the remittitur to this Court following decision of the said appeal." On application of the Authority an alternative writ of mandate was issued by this court for the respondent court to show cause why it should not be directed to set aside its order of August 1, 1968 enjoining the Adult Authority as set forth above (1 Civ. 25919). No return has been made to this writ. Here again the power of the court, even in aid of its own *163 judgment, to enjoin the action of an administrative body is subject to question. The defense of res judicata, if in fact available, could have been raised in the threatened proceedings without interfering with orderly administrative processes. In any event, for the reasons set forth in reversing the judgment, a peremptory writ should issue ordering the respondent court to set aside its order of August 1, 1968.
 The order in 1 Criminal 7331 is reversed.
 Let a peremptory writ of prohibition issue in action 1 Civil 25818.
 Let a peremptory writ of mandate issue in action 1 Civil 25919.
 Molinari, P. J., and Elkington, J., concurred.
NOTES
[fn. 1] 1. On cross-examination it was brought out that he had enjoyed freedom of expression and had been permitted to travel throughout the United States as an author and in his capacity as a staff writer for a magazine.
[fn. 2] 2. The same officer, to whom the petitioner referred by name, did sign the report of April 10, 1968, which contained the charge of noncooperation.
[fn. 3] 3. Petitioner has marshalled the following authorities in support of his position: Webster's International Dictionary. (2d & 3d eds); Oxford English Dictionary; sections 13100, 13101, and 13102 of the Vehicle Code, and Hamilton v. Dick (1967) 254 Cal.App.2d 123, 125 [61 Cal.Rptr. 894]; Insurance Code section 651, and Farmers Ins. Exchange v. Vincent (1967) 248 Cal.App.2d 534, 541 [56 Cal.Rptr. 775]; Probate Code section 74, and Estate of Martens (1937) 10 Cal.2d 395, 397-398 [74 P.2d 238], and Estate of Wikman (1906) 148 Cal. 642, 643-644 [84 P. 212]; Toland v. Toland (1898) 123 Cal. 140, 143-144 [55 P. 681]; and Greif v. Dullea (1944) 66 Cal.App.2d 986, 1001 [153 P.2d 581]. See also: Matter of Otterbein v. Barbor & Cameau Co. (1936) 272 N.Y. 149,152 [5 N.E. 2d 71, 72, 107 A.L.R. 1510]; Glenram Wine & Liquor Corp. v. O'Connell (1946) 295 N.Y. 336, 341- 342 [67 N.E.2d 570, 572-573]; Federal Land Bank v. Farmer's Mut. Ins. Assn. (1934) 217 Iowa 1098, 1101-1102 [253 N.W. 52, 54-55]; Elliott v. Farmer's Mut. Fire Ins. Assn. (1943) 233 Iowa 766, 773-774 [10 N.W.2d 556, 560].
[fn. 4] 4. Since section 3063 which requires "cause" for suspension or revocation of parole does not mention, as does section 3060, cancellation, it may be suggested that the latter term is used to avoid the requirement of the former section. This interpretation is unwarranted in this case where the record clearly indicates the intention to hold a hearing in which revocation requiring "cause" will be a material issue.
[fn. 5] 5. For other expositions of the rights and disabilities of a parolee reference is made to People v. Thompson (1967) 252 Cal.App.2d 76, 84-85 [60 Cal.Rptr. 203]; Aguilera v. California Dept. of Corrections (1966) 247 Cal.App.2d 150, 151 [55 Cal.Rptr. 292]; People v. Quilon (1966) 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294]; People v. Giles (1965) 233 Cal.App.2d 643, 646-647 [43 Cal.Rptr. 758]; and People v. Contreras (1957) 154 Cal.App.2d 321, 325 [315 P.2d 916]; but cf. People v. Gallegos (1964) 62 Cal.2d 176, 178 and 180 [41 Cal.Rptr. 590, 397 P.2d 174]; People v. Arellano (1966) 239 Cal.App.2d 389, 390-393 [48 Cal.Rptr. 686]; and People v. Butterfield (1962) 208 Cal.App.2d 243, 244-245 [25 Cal.Rptr. 60].