**Donald Edward MOZINGO, Petitioner,**

v.

**Walter E. CRAVEN, Warden, Folsom State Prison, Respondent.**

**Civ. No. 71–1578.**

United States District Court,
C. D. California.

March 17, 1972.

Gerald F. Uelmen, Los Angeles, Cal., for petitioner.

Evelle J. Younger, Atty. Gen., Herbert L. Ashby, Chief Asst. Atty. Gen., Crim. Div., Russell Iungerich, Deputy Atty. Gen., Los Angeles, Cal., for respondent.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Petitioner, a California state prisoner, seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his present confinement in Folsom Prison.

This case concerns the constitutional validity of the procedures followed by the California Adult Authority at petitioner's parole revocation hearing. In view of the importance of the issues, the facts of the case are set forth at length.

1. On December 16, 1965, petitioner was sentenced under the California Indeterminate Sentence Law to a term of one year to life imprisonment by the Superior Court for Orange County, California, after he entered a plea of guilty to a charge of second degree robbery. Calif.Pen.Code § 211. He began serving this sentence December 30, 1965.

2. On July 1, 1968, pursuant to its authority under California Penal Code section 3020, the California Adult Authority fixed petitioner's term at five (5) years, to expire December 30, 1970, and granted parole effective September 10, 1968.

3. On June 6, 1969, a Parole and Community Service hearing was conducted. Petitioner's parole was suspended and he was ordered returned to prison on the basis of a parole violation report which charged petitioner with two parole violations: (1) a violation of Condition 5B by being found guilty of drunk driving for an offense that occurred on November 18, 1968; and (2) a violation of Condition 11 by being convicted of traffic violations which occurred on November 10, 1968, and March 1, 1969. Petitioner was not present at the Parole and Community Service hearing. From April 10, 1969, until June 30, 1969, he was in the Sacramento County Jail, serving a sentence imposed for the traffic offenses which were the subject of the parole suspension proceedings. On June 30, 1969, he was returned to Folsom Prison. On July 11, 1969, petitioner was notified of the two charges against him, and on July 29, 1969, a parole revocation hearing was held. At the revocation hearing he appeared without counsel, and entered a plea of guilty to both counts. At the conclusion of the hearing his parole was revoked and his sentence was refixed at life imprisonment. At both the Parole and Community Service hearing and the revocation hearing the panel members had before them a parole violation report dated May 12, 1969, written by petitioner's parole agent. This report recommended petitioner's reinstatement on parole. Petitioner was never shown this report prior to or at the parole revocation hearing.

4. On November 10, 1969, the California Adult Authority refixed petitioner's sentence at seven (7) years, to expire December 30, 1972. On November 25, 1969, he was again placed on parole.

5. On January 8, 1970, petitioner was incarcerated at the Sacramento County Jail on a parole hold, after he advised his parole agent of his involvement in a barroom altercation. At a Parole and Community Service hearing in San Francisco on January 23, 1970, petitioner's parole was suspended on the basis of the agent's parole violation report, and he was ordered returned to prison. Petitioner was not notified in advance of the time or place of the Parole and Community Service hearing, or served with notice of the charges being considered. He was not present at the hearing. Petitioner was incarcerated at the California Medical Facility Reception Guidance Center at Vacaville on January 23, 1970. On February 2, 1970, petitioner was first notified of the charges against him.

6. The parole violation report charged petitioner with one violation of the conditions of parole: "violat[ing] Condition 12 by assaulting Herbert Bowman with his fists, feet and a pool cue causing him grievous bodily harm on or about 1-4-70". This report was the sole basis for the decisions of the Adult Authority at both the Parole and Community Service hearing and the subsequent parole revocation hearing.

7. In support of the charges the report stated as follows:

"On 1-4-70, Herbert Bowman . . . was playing pool in Mike's in 1424 Silica Ave. Sacramento when he was confronted by Mozingo who asked him to dance. When Mr. Bowman replied, 'you're not my type', Mozingo struck him with his fists and a pool cue which he broke in five pieces in assaulting the victim. Mozingo's brother, Ray, joined him in the assault and when Mr. Bowman attempt-

ed to identify the Mozingo brothers, he was again hit in the face and knocked to the floor where the Mozingo brothers kicked him with their feet and beat him with bar stools. During the affray the victim's wallet disappeared with $70 cash and numerous credit cards.

"On 1-6-70 Mozingo notified this agent of the assault but did not indicate there had been any Robbery of Mr. Bowman's wallet. Sacramento Police Department investigated the assault in their report #70390 and determined that all witnesses had been placed in fear of their lives by the Mozingo brothers. The Mozingos threatened bodily harm to anyone notifying the police, and called the bar by telephone after the assault and again made threats to all witnesses. At this time witnesses are so intimidated that they are fearful of testifying and therefore, Mozingo has been incarcerated on a parole hold.

"The Sacramento Police Department are [sic] continuing their investigation of the Robbery of the victim's wallet."

In addition, the parole report included the agent's analysis of petitioner's problem:

"Parolee's Reaction to Stress:

"Subject continues to use alcoholic beverages and has so indicated to this agent. When using even the smallest amount his defenses are down and he is prone to assaultive acts as described in their report. For the past week, he has threatened suicide at the Sacramento County Jail because of his depression due to his incarceration without a warrant and possibility of return to state prison. As of 1-20-70, at approximately 3 p.m. subject slashed his left forearm in three places in a suicide attempt and the official at the Sacramento County Jail transferred him to the Sacramento Medical Center for holding following this action.

"One of the cuts had to be stitched. He had been interviewed on 1-20-70 at noon by the undersigned agent, he indicated at that time he would use anything as a means to get psychiatric help as he felt the departmental clinician for OPC was not accurately giving him the help he needed. His feelings of resentment toward those in authority is great. He has lashed out at law enforcement officers and yesterday made an accusation that this agent was attempting to kill him. Being unable to act out his resentments he has directed them toward himself in the recent suicide attempt. He has very little respect for himself and readily justifies all his criminal behavior as being provoked by others.

. . .

"REASONS FOR RECOMMENDATION:

"Mozingo's recent release from STRU has made little imprint on his aggressive behavior as within five weeks he has maliciously assaulted a total stranger. His mental outlook at this time is deteriorating to such a degree as to warrant a long treatment period in a controlled setting.

"ALTERNATIVE PROGRAM

"Mozingo recently has mentioned brain damage as the key to his irrational acts and, if possible, further medical examination should be attempted to determine the direction of further treatment in this case."

8. A psychiatric evaluation completed on February 5, 1970, by Dr. B. K. Wilson, Chief Psychiatrist at Vacaville, summarized petitioner's mental problems as follows:

"In summary the subject has a very long history of antisocial behavior. He has had an explosive personality since early childhood and has been diagnosed as having encephalopathy due to trauma with psychomotor epilepsy only by use of alcohol by Dr. David Owens. He demonstrates impairment of his ability to process information in a normal way. He is unable to abstract thoughts and ideas in a normal way. He described a mounting anxi-

ety which he is unable to control as the basis for his seeking alcohol. His judgment and emotional controls are completely destroyed with the use of alcohol."

9. On March 9, 1970, petitioner, proceeding in propria persona, filed a petition for a writ of habeas corpus in the Superior Court for Solano County, California, alleging that he was being denied "due process of the laws and the Constitution of California and the United States". He requested an evidentiary hearing, alleging that his parole had been suspended without cause, and offered to present the testimony of witnesses on his behalf. On March 11, 1970, the Solano County Superior Court ordered the attorney general to file a return to the petition.

10. On March 13, 1971, petitioner appeared without counsel for the parole revocation hearing at the Vacaville facility and entered a plea of not guilty. He was briefly questioned about the circumstances of the barroom altercation. Although no transcript was made of this hearing, the panel's report purports to summarize what occurred. According to that report, petitioner denied the charge against him. He claimed he was trying to stop a fight in which his brothers were involved. He admitted drinking and claimed he didn't know what he was doing. He denied any knowledge of Mr. Bowman's missing wallet. Petitioner was not confronted with the witnesses against him nor permitted to present witnesses on his own behalf. At the conclusion of the hearing petitioner's parole was revoked and his sentence was automatically refixed at the maximum —life imprisonment. Petitioner was not shown the parole violation report prior to or at the parole revocation hearing.

11. On March 24, 1970, a return to the petition for writ of habeas corpus in the superior court was filed by the attorney general. Attached as exhibits thereto were copies of both parole violation reports, dated May 12, 1969, and January 22, 1970. The Solano County Superior Court then issued an order to show cause, and set the matter for an evidentiary hearing April 20, 1970, to hear witnesses and probe the facts of the altercation. Prior to the hearing, on April 8, 1970, the attorney general filed a writ of prohibition and/or writ of mandate, with the California Court of Appeal for the First Appellate District, seeking to restrain the superior court from holding a hearing, and asking that the superior court be ordered to discharge the order to show cause, deny the petition for a writ of habeas corpus, and dismiss the proceedings. The hearing was stayed, and the attorney general's petition was granted on July 17, 1970. *See* Pope v. Superior Court, 9 Cal.App. 3d 636, 88 Cal.Rptr. 483 (1970). On October 1, 1970, the California Supreme Court denied a petition for a hearing. On July 8, 1971, the instant petition for a federal writ of habeas corpus was filed.

12. On July 12, 1971, the California Adult Authority refixed Mozingo's sentence at nine and one-half (9½) years, to expire June 30, 1975. He was granted parole effective April 2, 1972.

Petitioner here contends, inter alia, that his parole was revoked in violation of due process because he was not afforded the assistance of counsel or the opportunity to confront adverse witnesses at his parole revocation hearing.

█ The state contends that petitioner did not raise these issues in his habeas corpus petition in the state courts and has failed to exhaust his state remedies. It is not necessary in the context of this case to decide whether the issues were raised in the state court for, in any case, consideration by this court of those issues is not inappropriate. It has been well established that federal relief should not be precluded by the exhaustion doctrine where repeated adverse rulings by the state courts indicate that any application to the state courts for relief would be futile. Dana v. Tracy, 360 F.2d 545, 548 (1st Cir.1966), cert. denied, 385 U.S. 941, 87 S.Ct. 311, 17 L.Ed.2d 221; Evans v. Cunningham, 335 F.2d 491 (4th Cir.1964); Boyd v.

O'Grady, 121 F.2d 146 (8th Cir.1941). The justification for this "futility" doctrine is apparent:

> "[J]ust as a petitioner is not required to seek relief from the state again and again, it makes little sense, given the costs of delay, to require a petitioner to present the state courts with a claim recently and firmly rejected by them. Limited to such cases, the futility doctrine is sound. It both reflects the harshness of requiring a habeas applicant to postpone his federal hearing until he has completed a useless progression through the state remedial machinery and forestalls the wasteful use of judicial resources resulting from vain applications to state courts." Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1099–1100 (1970).

That it would be "futile" to require petitioner to advance his arguments in the state courts is clear in view of the recent California Supreme Court decision in In re Tucker, 5 Cal.3d 171, 95 Cal. Rptr. 761, 486 P.2d 657 (1971). The court there determined that an alleged parole violator had no right to counsel at parole revocation proceedings. The court reached this conclusion by characterizing the Adult Authority's procedures as "administrative" and not "judicial" and by considering parole as "a matter of grace, a privilege and not a right", thereby virtually removing the Adult Authority from the strictures of our constitutional system and effectively foreclosing arguments, such as petitioner's here, which are founded upon notions of due process. As the uniform posture of state law is squarely against the relief sought herein, application of the futility doctrine is justified. For other California cases holding that the Adult Authority need not accord alleged parole violators the elements of a due process hearing, see In re Schoengarth, 66 Cal.2d 295, 57 Cal.Rptr. 600, 425 P.2d 200 (1967); In re Gomez, 64 Cal.2d 591 51 Cal.Rptr. 97, 414 P.2d 33 (1966); In re Sandel, 64 Cal.2d 412, 50 Cal.Rptr. 462, 412 P.2d 806 (1966); In re McLain,

55 Cal.2d 78, 9 Cal.Rptr. 824, 357 P.2d 1080, (1960); Pope v. Superior Court (Bush), 9 Cal.App.3d 649, 88 Cal.Rptr. 491 (1970); Pope v. Superior Court (Beasley), 9 Cal.App.3d 644, 88 Cal.Rptr. 488 (1970); People v. Villareal, 262 Cal. App.2d 438, 68 Cal.Rptr. 610 (1968); People v. Hernandez, 229 Cal.App.2d 143, 40 Cal.Rptr. 100 (1964); People v. Ray, 181 Cal.App.2d 64, 5 Cal.Rptr. 113 (1960), cert. denied, 366 U.S. 937, 81 S. Ct. 1662, 6 L.Ed.2d 848.

Furthermore, with specific reference to the petitioner here, the California Court of Appeal, in Pope v. Superior Court, *supra*, has stated with certainty that he is not entitled to counsel and confrontation. The court held that the issue of whether or not his parole was improperly revoked was conclusively resolved by a mere review of the record of the Adult Authority where he was not permitted counsel or the right of confrontation. The California Supreme Court denied a hearing. Thus, the issues presented by petitioner in his federal petition have been resolved against him. The doctrine of futility not only applies but the rhetorical question must be asked, "What else must Mozingo do to exhaust his state remedies?"

■ The Ninth Circuit has held that due process does not afford an alleged parole violator an absolute right to be provided with legal counsel and the opportunity to confront adverse witnesses at a parole revocation hearing. Ellhamer v. Wilson, 445 F.2d 856 (9th Cir. 1971); High Pine v. Montana, 439 F.2d 1093 (9th Cir.1971); Lincoln v. California Adult Authority, 435 F.2d 133 (9th Cir.1970); Mead v. California Adult Authority, 415 F.2d 767 (9th Cir.1969); Dunn v. California Department of Corrections, 401 F.2d 340 (9th Cir. 1968); Williams v. Dunbar, 377 F.2d 505 (9th Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 131, 19 L.Ed.2d 137 (1967). However, in the recent case of Dennis v. California Adult Authority, No. 25,747 (9th Cir. Feb. 15, 1972), the court made it clear that in some circumstances due process requires that the

Adult Authority afford the alleged parole violator the right to be represented by counsel, to confront the witnesses against him, and to present his own witnesses before his parole can be revoked. The court emphasized that due process requires the Adult Authority to follow procedures designed to enable it to make an informed decision upon the issues of each case. The ultimate test in each case is "whether the procedures followed by the Adult Authority were reasonably and fairly designed to enable it to ascertain whether issues existed concerning the asserted violation and to make an informed decision upon such issues".

The court's conclusion is clearly required by the basic premises that parole may not be revoked without "cause", and that the Adult Authority may not act in an arbitrary or capricious manner. *See* Mead v. California Adult Authority, *supra*; Dunn v. California Department of Corrections, *supra*.

The petitioner, in *Dennis*, had denied the charges against him at his parole revocation hearing and had offered to present the testimony of corroborating witnesses on his behalf. The Adult Authority, acting solely upon the written report of the parole officer, found the petitioner guilty. It did not confront him with the parole officer and did not allow him to present his own witnesses. The court held that the Adult Authority had arbitrarily refused to inform itself of the factual issues of the case and had "acted in disregard of what fair inquiry into the truth might disclose". The parole revocation was sustained, however, on the basis of another charge against petitioner to which he had pleaded guilty in a state court proceeding.

The holding in *Dennis* has been reaffirmed in Wilburn v. Nelson, No. 71–1135 (9th Cir. March 2, 1972). The court there denied the petition, however, because petitioner had "failed to allege facts demonstrating that assistance of counsel was an essential element of due process in this case".

The Court of Appeals for the Ninth Circuit has thus adopted a due process rule which must be applied on a case-by-case basis. The due process clause does not require the right to counsel and the right of confrontation in all cases, but only those in which those rights would be meaningful.

The instant case clearly demonstrates the principles set forth in *Dennis* and *Wilburn* as to when the Adult Authority must under the due process clause permit the right of counsel and the right to confront adverse witnesses. Petitioner's parole was first revoked in 1969 because he had been convicted and was serving a sentence for violation of other offenses. As stated in *Dennis*, "Thus, clearly and beyond dispute, appellant had violated the conditions of his parole. Refusal to listen to his witnesses under these circumstances did not offend due process."

The 1970 parole revocation, however, is not a "routine case", as that distinction is made in *Dennis*, and it is clear beyond dispute that the Adult Authority failed to make "fair inquiry into the truth" of the charge against petitioner. Petitioner was charged in the parole violation report with only one violation of parole: assaulting Herbert Bowman with his fists, feet and pool cue causing him grievous bodily harm. The parole agent did not have personal knowledge of the altercation in the bar or of the alleged injury to Mr. Bowman. He apparently based the charge solely upon a report filed during the course of a routine police investigation of the incident. It is important to note that petitioner was never charged with breaking any law or prosecuted in any court for his alleged participation in the barroom incident. No witnesses ever testified against him. At the parole revocation hearing petitioner denied the charge and attempted to explain his conduct. With nothing before them but the parole agent's report and petitioner's previous records, the Adult Authority made a factual determination that petitioner committed the assault. Upon that factual determination, the Authority revoked his parole

**302**

and redetermined his sentence to life imprisonment.

 History and experience have taught us that complex factual determinations simply cannot be made with any degree of accuracy in the type of one-sided prosecution-by-hearsay hearing which petitioner was afforded. In the instant case, where the facts of the alleged parole violation and possible mitigating elements are complex and controverted, the Adult Authority's hearing procedures were not adequate "to enable it to ascertain whether issues existed concerning the asserted violation and to make an informed decision upon such issues". Dennis v. California Adult Authority, *supra*. Accordingly, the procedures failed to meet the requirements of due process.

 This court is not in a position to state precisely what procedural rights petitioner would have to be afforded in order to insure that the Adult Authority was sufficiently informed of the issues and facts of the case. That determination must rest initially with the Authority itself. It would appear necessary, however, for the Authority, at a minimum, to grant petitioner's request to present the testimony of witnesses on his behalf. In view of the seriousness of the assault charge and the complexity of the factual determinations necessary, including psychiatric evaluation, petitioner must also be afforded the right to the assistance of counsel. Only with the aid of counsel could the disputed facts of the barroom incident be fully developed and the significance of petitioner's mental condition be effectively presented. *See* Bearden v. South Carolina, 443 F.2d 1090 (4th Cir. 1971) (en banc), petition for cert. dismissed, Midgett v. Slayton, 405 U.S. 972, 92 S.Ct. 965, 30 L.Ed.2d 785, 1972, *see also*, United States ex rel. Bey v. Connecticut State Board of Parole, 443 F.2d 1079 (2nd Cir.1971), *vacated as moot*, 404 U.S. 879, 92 S.Ct. 196, 30 L. Ed.2d 159.

Pursuant to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum opinion shall constitute the findings of fact and conclusions of law of the court.

Pursuant to the provisions of Rule 58, a judgment shall be entered as follows:

"1. The petitioner is being held in custody by the respondent and the State of California in violation of the Constitution of the United States.

"2. He is entitled to a writ of habeas corpus from this court, and the writ will issue, unless the respondent and the State of California shall within 60 days from the date this judgment becomes final institute proceedings to conduct a hearing before the California Adult Authority which shall meet the requirements of due process, including the right of the petitioner to the assistance of counsel, to confront adverse witnesses and to present witnesses on his own behalf.

"3. The court retains full jurisdiction of the case to modify, amend and enforce the judgment."

It is further ordered that the clerk this date shall serve copies of this memorandum opinion by United States mail upon counsel for the petitioner, and the Attorney General of the State of California at his Los Angeles office.