[Crim. No. 8880.   In Bank.   June 30, 1965.]

In re MONROE SMITH HALL on Habeas Corpus.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Don Edgar Burris and E. V. Cavanagh for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Respondent.

McCOMB, J.—An application for a writ of habeas corpus has been filed by Don Edgar Burris on behalf of Monroe Smith Hall (hereafter called petitioner) alleging that he is being illegally detained at Folsom State Prison.

*Facts:* Petitioner was convicted of assault with a deadly weapon, the maximum penalty being 10 years' imprisonment (Pen. Code, § 245). He entered state prison on June 23, 1954, and on November 23, 1959, his term was fixed by the Adult Authority at eight and one-half years, with the last two and one-half years on parole. His tentative discharge date was set for December 23, 1962.

On June 25, 1960, he was released on parole. While on parole he was arrested on suspicion of murder, was subsequently tried and found guilty of second degree murder, and on October 8, 1962, was sentenced to prison for the term prescribed by law, the sentence to run consecutively from the term he was then serving.

On October 12, 1962, the Adult Authority cancelled his parole for violation of two conditions: (1) conviction of murder and (2) associating, without permission, with a former inmate of a penal institution; and it refixed his term at the maximum until further order.

Petitioner appealed from the judgment on the murder conviction. This court, finding the evidence insufficient as a matter of law to sustain his conviction, reversed the judgment (*People* v. *Hall*, 62 Cal.2d 104 [41 Cal.Rptr. 284, 396 P.2d 700]) on November 25, 1964. He was retried and found not guilty on January 27, 1965.

On or about January 28, 1965, petitioner filed a petition for writ of habeas corpus in the Los Angeles Superior Court. The sheriff was ordered to deliver petitioner to court on February 11, 1965, but for some reason that is not entirely clear from the record delivered him to Folsom instead. The matter was continued so that the Attorney General could ap-

pear for the Adult Authority, and several hearings were had at which petitioner was not present but was represented by counsel.

At the hearing on April 6, 1965, the court again continued the matter to June 8, believing that it would be in the best interest of both petitioner and society to allow the Adult Authority a reasonable time to facilitate his reentry into the community. Petitioner dismissed his petition in the superior court and filed his present petition here.

Before reversal of his conviction, the Adult Authority on September 8, 1964, ordered petitioner's parole revoked and his credits forfeited, and placed the matter on its May 1967 calendar. After learning of his acquittal, the Adult Authority on February 24, 1965, rescinded its action of September 8, 1964, and placed the matter on its March 1965 calendar. On March 24, 1965, it refixed petitioner's term at the 10-year maximum and ordered his release upon an approved parole program. Petitioner's attorney informed the Department of Corrections that his client would not accept parole.

Question: *Did the Adult Authority have power to place petitioner on parole?*

*No.* The Attorney General's contention that the Adult Authority had custody of petitioner until January 1966 cannot be sustained under the circumstances of this case.

Petitioner's parole was suspended for cause on October 16, 1962. After suspension or revocation, a parolee is deemed a fugitive from justice, and the time between a valid order of suspension and his actual return to state prison is not credited to his term. (Pen. Code, § 3064.)

An order suspending parole is preliminary in nature, pending the investigation and outcome of the prosecution of the charge. Its finality is determined when the truth of the charge is shown by conviction. However, where the prosecution culminates in an acquittal, and no other charges support the suspension, the Adult Authority should vacate its preliminary order suspending parole (*In re Payton,* 28 Cal.2d 194, 197 [2] [169 P.2d 361]), and the time spent in jail pending trial and during trial is time which must be counted on either the prison or parole time. (15 Ops.Cal.Atty.Gen. 53-57.) Therefore, had suspension of parole been based solely on the murder conviction, no cause would remain for suspension on that charge after acquittal, and petitioner's term would have expired on June 24, 1964.

Because the order suspending parole was based not only on

the murder conviction but also on a second charge of associating with an ex-felon (the murder victim), the Attorney General argues that petitioner's term may nevertheless be extended by the same period of time attributable to the first charge, which was the one year and seven months between the order of suspension and his actual return to state prison on May 15, 1964.

We do not know when petitioner would have been reimprisoned had his parole suspension been based solely on this second charge, but undoubtedly the Adult Authority would have immediately enforced its order of October 16, 1962, that he be returned to prison as a parole violator, and therefore his fugitive time would have been considerably shorter than is contended by the Attorney General.

It would be manifestly unjust to allow the Adult Authority to add fugitive time that was computed on a now nonexistent cause for revocation to support an extension of petitioner's term on the second, less serious, charge. Petitioner has been sufficiently punished for his misconduct by the redetermination of his term at maximum and by his actual imprisonment beyond that term awaiting his retrial.

The Adult Authority's concern for petitioner's welfare and its good-faith belief that "parole appeared to be the best method whereby Mr. Hall might bridge the gap between the intense supervision of Folsom Prison and comparative freedom in the community," albeit laudable, do not confer jurisdiction to maintain constructive custody over him.

The writ is granted.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Burke, J., and White, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.