[Crim. No. 18810. In Bank. Feb. 4, 1976.]

In re PETER HARRISON DUNHAM on Habeas Corpus.

64

**COUNSEL**

Alex Landon, under appointment by the Supreme Court, for Petitioner.

Paul G. Sloan and Friedman & Sloan as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth, Karl J. Phaler and Steven V. Adler, Deputy Attorneys General, for Respondent.

John E. Howard, Acting District Attorney (Los Angeles), Harry B. Sondheim and Jay J. Becker, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

**OPINION**

**RICHARDSON, J.**—This case is a companion to *In re Coughlin, ante,* page 52 [127 Cal.Rptr. 337, 545 P.2d 249], wherein we hold that the trial court at a probation revocation hearing properly may consider evidence indicating that the probationer may have committed another criminal offense during the probation period, despite his acquittal of that offense at trial. In the present case, we adopt a similar rule with respect to *parole* revocation proceedings conducted before the Adult Authority.

In September 1972, petitioner was placed on parole after serving a portion of a prison term for an unspecified offense. On July 25, 1974, he was arrested and charged with two counts of armed robbery (Pen. Code, § 211) and possession of a concealable weapon by an ex-felon (Pen. Code, § 12021). On August 12, 1974, a preliminary examination was conducted and petitioner was held to answer the robbery charges. The possession of a concealable weapon charge was dismissed for lack of evidence; however, the magistrate did find that petitioner was armed and used a firearm in the course of the robberies. On October 11, 1974, an amended information was filed charging petitioner with additional offenses which the evidence at the preliminary examination indicated petitioner had committed (see Pen. Code, § 739), namely, burglary (Pen. Code, § 459) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). On March 11, 1975, petitioner commenced jury trial on the foregoing offenses, and on April 2, 1975, he was acquitted of these charges.

When petitioner was first arrested, a parole hold was placed on him by his parole officer, and on February 11, 1975, petitioner was notified of the charges supporting parole revocation. These charges included the offenses of which petitioner was later acquitted. Nevertheless, on April 7, 1975, following his acquittal, petitioner was notified by the Adult Authority that a parole revocation hearing would take place on April 23. This hearing lasted approximately 8 hours; testimony was elicited from 13 witnesses, including petitioner and his counsel, and documentary evidence was introduced, including exhibits from petitioner's trial. Following the hearing, petitioner was found to have possessed a firearm, to have committed armed robbery, and knowingly to have associated and resided with homosexuals (a parole violation not the subject of his former trial). Petitioner's parole was ordered revoked.

Thereafter, on April 29, 1975, petitioner filed a petition for a writ of habeas corpus in superior court, contending that his parole was improperly revoked. Following a hearing, the court ordered the "associating with homosexuals" charge stricken, but denied all other relief. Petitioner now contends that his parole should not have been revoked on the basis of offenses of which he was acquitted at trial. He also urges that the delay in notifying him of the parole revocation charges and in conducting a prompt prerevocation hearing was improper under *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].

Under Penal Code section 3060, the Adult Authority is given "full power to suspend, cancel or revoke any parole . . . ." The sole statutory restriction upon the power to revoke parole is section 3063, which provides that "No parole shall be suspended or revoked without cause, which cause must be stated in the order suspending or revoking the parole." Of necessity, the authority has broad discretion in determining whether or not to revoke parole. (See *In re Tucker* (1971) 5 Cal.3d 171, 176 [95 Cal.Rptr. 761, 486 P.2d 657].) As pointed out in the landmark case of *Morrissey* v. *Brewer, supra,* this decision requires the availability of accurate facts, since it ". . . involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts." (408 U.S. at p. 480 [33 L.Ed.2d at p. 493].) As we recently concluded in *In re Minnis* (1972) 7 Cal.3d 639, 645 [102 Cal.Rptr. 749, 498 P.2d 997], in our consideration of the powers of the Adult Authority, "Any official or board vested with discretion is under an obligation to consider *all* relevant factors . . . ." (Italics in original.) A review of the applicable cases establishes that the courts have been sensitive to the authority's need for accurate information regarding a parolee's conduct while released to society.

In *In re Payton* (1946) 28 Cal.2d 194 [169 P.2d 361], relied upon by petitioner, parole was suspended without hearing when new charges were filed against the parolee. We suggested in *Payton* that in the event of an acquittal, the suspension order should be vacated, assuming that no other charges supported suspension of parole. We reaffirm this principle, for it would be improper for the Adult Authority to continue to suspend parole in sole reliance upon *the mere filing* of charges against a parolee, once an acquittal has occurred. *Payton,* of course, does not suggest that the Adult Authority would be precluded by the acquittal from holding a hearing and examining the facts surrounding the charges in deciding whether to revoke parole.

Indeed, this very question was resolved a few years later in *In re Anderson* (1951) 107 Cal.App.2d 670 [237 P.2d 720] [hg. den.]. There, the Adult Authority revoked parole on the ground of possession of a firearm despite the parolee's prior acquittal of that offense. The court noted that it is the general rule that judgments in criminal cases neither preclude subsequent civil proceedings nor conclusively establish innocence, in view of the different standards of proof required in these proceedings. (See cases cited in *Coughlin, supra, ante,* at p. 52.) The *Anderson* court explained that ". . . the Adult Authority in matters of parole accepts a heavy responsibility in permitting convicts to be at large and if it was believed *after a hearing* that the preponderance of evidence was to the effect that petitioner had in fact had a gun in his possession the Authority's action in revoking his parole ought not to be interfered with notwithstanding in the criminal proceeding in Los Angeles County he had been acquitted of the same charge." (P. 673, italics added; accord, *Standlee* v. *Smith* (1974) 83 Wn.2d 405 [518 P.2d 721]; *contra, Standlee* v. *Rhay* (D.Wash. 1975) 403 F.Supp. 1247.)

The court in *Anderson* concluded that our *Payton* decision was not intended ". . . to depart from the general rules [regarding the inconclusive effect of acquittals in criminal cases] we have herein discussed nor to hold that by such an acquittal the Adult Authority is bound and barred from proceeding themselves to determine the facts of the charge." (P. 674) We denied a hearing in *Anderson* and, indeed, as late as 1963 cited *Anderson* with approval for the proposition that "An acquittal is merely an adjudication that the proof at the prior proceeding was not sufficient to overcome all reasonable doubt of the guilt of the accused." (*People* v. *Griffin* (1963) 60 Cal.2d 182, 191 [32 Cal.Rptr. 24, 383 P.2d 432] [permitting introduction *at a criminal trial* of evidence regarding defendant's prior similar offense, despite his acquittal of that offense]; see also *People* v. *Vaughn* (1969) 71 Cal.2d 406, 420 [78 Cal.Rptr. 186, 455 P.2d 122] [same].)

Petitioner also relies upon a certain dictum in *In re Hall* (1965) 63 Cal.2d 115, 117 [45 Cal.Rptr. 133, 403 P.2d 389], to the effect that the Adult Authority should vacate its preliminary order suspending parole once the defendant has been acquitted of the charges upon which the suspension order was based. Once again, as in *Payton,* we said nothing in *Hall* to suggest that the Adult Authority lacked power to hold its own hearing to determine whether parole should be revoked on the basis of the facts underlying the defendant's acquittal of criminal charges. *Hall*

and *Payton* stand as authority for the sole proposition that a preliminary suspension order cannot stand once an acquittal has occurred.

The two most recent cases of this court on the subject explain the proper function of the Adult Authority in this area. In *In re Brown* (1967) 67 Cal.2d 339, 341-342 [62 Cal.Rptr. 6, 431 P.2d 630], we held that although an invalid conviction, reversed on appeal, cannot support revocation of parole, such reversal "does not foreclose further inquiry into the subject matter of that conviction·by either the courts or the Adult Authority. The Adult Authority may properly, under its own procedures, determine whether defendant has engaged in conduct that constitutes cause for parole revocation." (See also *In re Melendez* (1974) 37 Cal.App.3d 967 [112 Cal.Rptr. 755] [dismissal of criminal charges no bar to parole revocation]; *Pope* v. *Superior Court* (1970) 9 Cal.App.3d 644 [88 Cal.Rptr. 488] [same].) In *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734], we made it clear that the Adult Authority properly may consider the evidence underlying a criminal conviction reversed on appeal, including an illegally obtained (but voluntary) confession. In amplification we said: "[T]he social consequences of imposing the exclusionary rule upon the authority can be disastrous. Conceivably, if the improperly obtained evidence were the sole basis for parole revocation, the authority might find itself unable to act in the case of the paroled murderer whom the police improperly discovered had cached a minor armory for future use or the paroled narcotics peddler who had collected a quantity of heroin for future sale. Although we recognize, of course, that such evidence would not be admissible in a court of law, we believe that an agency whose delicate duty is to decide when a convicted offender can be safely allowed to return to and remain in society is in a different posture ʼthan the court which decides his original guilt. To blind the authority to relevant facts in ʼthis special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence." (P. 650.)

Thus, under our rule in *Martinez*, had petitioner herein confessed to the offenses with which he was charged, the Adult Authority could consider his confession in revoking parole even though the confession were improperly obtained. Yet, under petitioner's proposed rule, his acquittal ipso facto would bar the authority from relying upon *any* of the underlying evidence, including the confession. Such a rule would be squarely contrary to our *Martinez* rationale.

Petitioner points to newly enacted section 2657, subdivision (a), of the Penal Code as demonstrating a legislative intent to preclude parole revocation for the commission of criminally charged acts of which the parolee has been acquitted. Section 2657, however, by its terms applies only to persons "confined in a state prison" and prevents "any institutional disciplinary action" based upon criminal charges of which the prisoner has been acquitted. The section by its terms has no bearing on the question before us, for it does not touch upon the subjects of parolees or parole revocation. Had the Legislature intended to treat parole matters, it would have done so expressly.

Petitioner next asserts that "relitigation" of the criminal charges violated constitutional guarantees against double jeopardy. However, as explained in *Coughlin, supra, ante,* page 52, the double jeopardy clause prevents a second *prosecution* for the same conduct or subject matter. *(In re Crow* (1971) 4 Cal.3d 613, 623 [94 Cal.Rptr. 254, 483 P.2d 1206].) A parole revocation hearing, like a probation revocation hearing, is not a second criminal prosecution. (See *In re Minnis, supra,* 7 Cal.3d 639, 650-651.) The proceedings assume the form of a trial only because due process principles require that a formal hearing be held for the offender's own protection. *(Morrissey* v. *Brewer, supra,* 408 U.S. 471.)

Thus, we conclude that the Adult Authority was entitled to review and consider the evidence indicating that petitioner may have committed new offenses while on parole, despite the fact that petitioner was acquitted of those offenses. We note that petitioner does not dispute that the evidence which was introduced at the parole revocation hearing was sufficient to establish good cause for revoking parole.

■ Petitioner contends that the delay in notifying him of the revocation charges tainted the proceedings. Although petitioner was arrested on July 25, 1974, and a parole hold was placed against him at that time, he was not formally notified of the charges supporting parole revocation until February 11, 1975. At the time of his arrest, however, petitioner was charged with various criminal offenses each of which would have constituted ample ground for revoking his parole. At petitioner's request, the parole revocation hearing was postponed pending the criminal trial. Clearly, petitioner had ample notice that the criminal charges might also form the basis for parole revocation.

Petitioner also complains that he was deprived of a timely prerevocation or "probable cause" hearing. (See *In re Valrie* (1974) 12 Cal.3d 139

[115 Cal.Rptr. 340, 524 P.2d 812].) Yet as we explained in *In re Law* (1973) 10 Cal.3d 21, 26-27 [109 Cal.Rptr. 573, 513 P.2d 621], a timely preliminary examination may afford a satisfactory substitute for the prerevocation hearing mandated by *Morrissey, supra.* Petitioner was afforded such a hearing as to the pending criminal charges a few weeks after he was arrested; moreover, as noted above, petitioner expressly waived the initiation of revocation proceedings pending the outcome of his trial.

The order to show cause is discharged, and the petition for a writ of habeas corpus is denied.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.