Filed 12/22/15  P. v. Craig CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KELLI DAWN CRAIG,<br><br>　　　　Defendant and Appellant. | B256794<br><br>(Los Angeles County<br>Super. Ct. No. GA086289) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Darrell S. Mavis, Judge.  Affirmed.

　　　　Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Stephanie C. Brenan and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Kelli Dawn Craig appeals from the judgment entered following her convictions by jury on count 3 – perjury, and count 5 – forgery committed by altering, corrupting, or falsifying a legal document. (Pen. Code, §§ 118, subd. (a), 470, subd. (c).) The court sentenced appellant to prison for two years. We affirm.

## FACTUAL SUMMARY

1. *People's Evidence.*

Viewed in accordance with the usual rules on appeal (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that prior to April 14, 2010, Sherry Behrle lived in a house in Tujunga. On April 14, 2010, Behrle died. On April 21, 2010, Charles Henderson, Behrle's brother, learned she had died.

Henderson testified as follows. On April 22, 2010, Henderson and his wife went to Behrle's house. Appellant was there and Henderson's wife asked appellant if appellant knew anything about Behrle's final wishes. Appellant replied Behrle had left everything to appellant. Henderson later determined that on April 29, 2010, appellant had filed a petition to probate a will as executor of Behrle's estate (hereafter, petition). Attached to the petition was Behrle's purported will (hereafter, will). The will purported to be signed on February 8, 2010, by Behrle as testator, and by Karen Lundquist and Thomas Norman as witnesses.

On February 4, 2011, the probate court issued an "order after trial" (order).[1] (Capitalization omitted.) The order (People's exhibit No. 5) stated, inter alia, "[t]he Court finds the purported signature of Sherry Behrle on the purported 2/8/10 will filed with the Petition for Probate filed by [appellant] is a forgery and therefore the petition is denied for lack of due execution of the will." The order was admitted into evidence without objection.

---

[1] Henderson testified he did not "go to trial on the merits of [the probate] case" but he supplied the probate court with information, including results from a document examiner, to help the probate court make its decision.

2

Lundquist testified as follows. Lundquist had been friends with Behrle and Norman, and had known appellant. Appellant had lived in the rear unit of Behrle's house. After Behrle died, appellant and Norman came to Lundquist's house and presented the will to Lundquist. At the time, Lundquist did not recall seeing Behrle's signature on the will. Lundquist felt uncomfortable with the will and told appellant not to "send it in," but appellant said the document was an amendment.

Lundquist and Norman signed the will as witnesses. Lundquist erroneously dated her signature as February 8, 2010. The will indicated Behrle's estate would go to appellant. Lundquist had known Behrle about 20 years and was familiar with Behrle's signature. Lundquist testified Behrle's purported signature on the will was not genuine.

In May and June 2010, Lundquist signed declarations (for probate proceedings) indicating the will was proper. Lundquist fabricated in a declaration that on February "18," (*sic*) 2010, Behrle asked Lundquist and Norman to witness the will.

Norman testified as follows. Norman had known Behrle, appellant, and Lundquist. Appellant gave Norman a document and told him to sign it. He signed it after Behrle's death. Norman believed the document allowed appellant to continue living in the rear unit of Behrle's house. Norman erroneously dated his signature as February 8, 2010, because appellant told him to write that date. Norman knew he was doing wrong by backdating the document.

Norman later learned he had signed a will that gave everything Behrle owned to appellant. Norman also signed a declaration regarding appellant's petition. The declaration falsely stated that on February 8, 2010, he stopped by Behrle's house and she asked Norman and Lundquist if they would be willing to witness Behrle's will. Norman signed another declaration indicating Behrle signed the will in his presence. At appellant's request, he signed another such declaration. Appellant presented to Norman the signature page of the will, a proof-of-subscribing-witness document, and a declaration, and he signed because she told him to do so.

3

William Leaver, a Los Angeles Police Department forensic document examiner, testified he examined exemplars and the will to determine if appellant, Lundquist, or Norman signed Behrle's purported signature, and the results were inconclusive. Leaver also testified Behrle might not have signed the will.

Los Angeles Police Sergeant Robert Grant investigated the present case and interviewed appellant. Appellant told Grant the following. Appellant had known Behrle a long time and had been her caregiver during the latter part of Behrle's life. On April 28, 2010, appellant, Lundquist, and Norman created a will that was submitted to the probate court. Norman actually created the will, and Lundquist and Norman were going to be witnesses. Appellant signed Behrle's signature on the will and signed Behrle's initials on the witness page. At some point when appellant, Lundquist, and Norman were completing the will, they realized Lundquist and Norman had signed the wrong date, i.e., April 28, 2010, on the witness page. A new witness page was signed with the date February 8, 2010.

Grant had appellant identify where she had signed or initialed the will. Appellant circled and initialed where she had signed. She did the same thing on the second page (the witness page) of the will. The interview was tape-recorded but the recording was lost. The will (People's exh. No. 16), with appellant's circling and initialing, was admitted into evidence.

2. *Defense Evidence.*

In defense, appellant, a bookkeeper, denied committing the charged offenses and testified as follows. A few days after Behrle's death, Norman told appellant about the will. Norman said he saw Behrle sign the will and Norman and Lundquist signed as witnesses. On April 27, 2010, Norman gave appellant a copy of the will. On April 29, 2010, appellant filed the probate action. Appellant, acting as her own attorney, gave to Norman and Lundquist documents appellant had typed. To the best of appellant's knowledge, the will was genuine. Appellant did not know during probate proceedings the will might have been a forgery.

4

According to appellant, when Grant arrested her, he said her former husband was an aider and abettor for harboring her as a fugitive. Grant said he would take appellant's children to child protective services if she did not cooperate. Before Grant interviewed appellant, she asked for counsel. Grant replied he would have an officer pick up appellant's former husband and her children while Grant and appellant waited for counsel and handwriting exemplars. Appellant was afraid and proceeded with the interview.

At trial, appellant denied telling Grant she forged the will or gave it to Lundquist and Norman to sign, and denied preparing any portion of the will or signing it. Appellant circled items on the will because she was afraid Grant would arrest her former husband and take her children. Lundquist, Norman, and Grant lied during their testimony and only appellant told the truth. Kurt Kuhn, a forensic science consultant, examined the will and opined it suggested appellant did not sign Behrle's purported signature.

## ISSUES

Appellant claims (1) the trial court erred by admitting into evidence the order reflecting the probate court's finding Behrle's signature was forged and (2) insufficient evidence supports her convictions.

## DISCUSSION

1. *The Probate Order Was Admissible.*

    a. *Pertinent Facts.*

An amended information alleged that, on April 29, 2010, appellant committed forgery by signing Behrle's name on her will (Pen. Code, § 470, subd. (a); count 1), perjury by declaration, i.e., "a Petition for Probate," (count 3) and forgery by altering, corrupting, and falsifying a record of, inter alia, a will (count 5). During May 16, 2014 pretrial discussions, appellant indicated she did not want the entire probate file introduced into evidence at the present trial. Appellant's counsel stated, "I know [the prosecutor] is planning to use the order that was entered which supposedly said the will was forged. Fine." Appellant's counsel added that, nonetheless, she wanted the court to ask the prosecutor how many documents from the probate case the prosecutor intended to introduce at trial because the present case was not a probate case and "it's irrelevant."

5

The prosecutor indicated she did not intend to introduce the entire probate file. The parties agreed to review the exhibits the prosecutor intended to introduce. At trial in the present case, the People introduced the order into evidence without objection. The jury acquitted appellant on count 1 but convicted her on counts 3 and 5.

b. *Analysis.*

Appellant claims "the probate order, and the specific finding, therein, that the purported signature of Sherry Behrle on her purported will was a forgery" were irrelevant and excludable under Evidence Code section 352. Appellant essentially argues the trial court should not have received the order to the extent it recited (1) the probate court's finding that the purported signature of Behrle on the will was a forgery, and (2) the resulting ruling denying the petition for lack of due execution of the will (hereafter, the challenged evidence).

We reject appellant's claim as unavailing. Appellant never objected to the introduction into evidence of the order or the challenged evidence. She therefore waived the admissibility issues of whether the order and challenged evidence were relevant or excludable under Evidence Code section 352. (Cf. *People v. Benson* (1990) 52 Cal.3d 754, 786-787, fn. 7; Evid. Code, § 353.)

Even if the issues were not waived, appellant's claim lacks merit. As to relevance, Evidence Code section 210, states, in pertinent part, " '[r]elevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." An appellate court applies an abuse of discretion standard of review to any ruling by a trial court concerning relevance. (*People v. Waidla* (2000) 22 Cal.4th 690, 717-718 (*Waidla*).)

The probate court was tasked with the official responsibility of determining, inter alia, whether Behrle's purported signature as testator was forged and whether the will was duly executed. The order stated it was an order "after trial," accordingly, there was evidence the probate court conducted a trial on the issues. Appellant concedes "the probate court order was entitled to be presumptively considered as a valid order, entered

6

upon the court making all the necessary factual findings to support the judgment."[2] Following that trial, the probate court stated Behrle's signature was forged and denied the petition for lack of due execution of the will.

At issue at trial in the present case was whether appellant forged Behrle's signature on the will in violation of Penal Code section 470, subdivision (a) (count 1), perjured herself in violation of Penal Code section 118, subdivision (a) in the petition (count 3), and/or committed forgery prohibited by Penal Code section 470, subdivision (c) with respect to the will (count 5). The probate court's statement and ruling (the challenged evidence), if true, were evidence from the probate court that Behrle's signature on the will was a forgery and the will was not duly executed. The challenged evidence, if true, had a tendency in reason to prove elements of each of counts 1, 3, and 5.

There is no dispute the challenged evidence was not inadmissible hearsay.[3] Evidence is generally admitted for all purposes unless a limiting instruction is requested (*People v. Vinson* (1969) 268 Cal.App.2d 672, 675) and appellant did not request one. Even if appellant had posed a relevance objection, the trial court would not have abused its discretion by admitting into evidence the challenged evidence as relevant.

---

[2]    Even if a formal probate trial did not occur, there was evidence that, during a probate proceeding, the probate court received information, including documentary information (see fn. 1, *ante*) on the issues.

[3]    Appellant did not pose a hearsay (or any other) objection to the order. Nor does appellant expressly assert here that the order was hearsay. We note appellant asserts in his opening brief, "official business records [*sic*] rules and the order's certification also rendered [the order] potentially admissible. (Evid. Code, §§ 1280, 1531.)" Evidence Code section 1280 is the official records hearsay exception. Appellant's above quoted assertion is a concession that, in light of the official records hearsay exception (if not also because of the business records hearsay exception (section 1271)) the order was not inadmissible hearsay.

7

None of appellant's arguments compel a contrary conclusion. Appellant, citing *Kilroy v. State of California* (2004) 119 Cal.App.4th 140 (*Kilroy*), argues "[p]rinciples of judicial notice prohibit a court from taking judicial notice of the truth of the facts or findings of fact asserted in orders – unless the order . . . establishes a fact for purposes of law of the case, res judicata, or collateral estoppel." However, judicial notice is a substitute for evidentiary proof and a judicially noticed fact cannot be controverted. (*People v. Rubio* (1977) 71 Cal.App.3d 757, 765.) The probate court's finding and ruling were not judicially noticed but were admitted into *evidence* to permit *litigation* of the issues of *whether* Behrle's purported signature was forged, whether the will was duly executed, and whether appellant committed the crimes alleged in counts 1, 3, and 5. Principles of law of the case, res judicata, and collateral estoppel are inapplicable. Appellant's reliance on *Kilroy* is misplaced.

As mentioned, appellant conceded that, in light of the official records hearsay exception (if not also because of the business records hearsay exception), the challenged evidence was not inadmissible hearsay (see fn. 3, *ante*). Nonetheless, appellant also cites *Kilroy* for the proposition that "[u]nder the business records . . . rules, the records proved only the existence of the particular act or document, and 'not that what is asserted in the act is true.' " Even if appellant were raising a hearsay issue, *Kilroy*, as mentioned, involved an issue of judicial notice, not admissibility of evidence. Moreover, the challenged evidence was admissible under the Evidence Code section 1280 official records hearsay exception as against any hearsay objection.

As to Evidence Code section 352, that section states, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We review for abuse of discretion any claim a trial court erred in its rulings on an Evidence Code section 352 issue. (*Waidla, supra,* 22 Cal.4th at pp. 717, 724.)

8

The challenged evidence was highly probative on the issues of whether Behrle's purported signature was forged and whether the will was duly executed. Admission of the order and challenged evidence did not require undue consumption of time. The challenged evidence did not state appellant was the person who forged Behrle's purported signature or that appellant caused the will not to be duly executed.

The challenged evidence was no more inflammatory than (1) Lundquist's testimony that Behrle's purported signature was not genuine, (2) appellant's effective statement to Grant that appellant, Lundquist, and Norman created the will, and (3) appellant's statement to Grant that appellant signed Behrle's signature on the will and affixed Behrle's initials next to the signatures of Lundquist and Norman. If appellant had requested a limiting instruction, the trial court in the present case could have told the jury to consider the challenged evidence with the rest of the evidence and that the jury was free to accept or reject any evidence in whole or in part. Even if appellant had sought exclusion of the challenged evidence under Evidence Code section 352, the trial court would not have abused its discretion by failing to exclude the evidence under that section.

None of appellant's arguments compel a contrary conclusion. In particular, appellant argues the trial court should have excluded the order under Evidence Code section 352 because the probate court's factual finding that Behrle's signature was forged was based on a lesser standard of proof and withdrew the issue of forgery from the jury. We disagree. The finding was merely evidence; no issue preclusion occurred. In sum, we conclude the trial court did not err, constitutionally or otherwise, by admitting into evidence the order and challenged evidence.

Even if the trial court erred by receiving the challenged evidence, it does not follow we must reverse the judgment. Lundquist testified Behrle's purported signature on the will was not genuine. Appellant herself effectively admitted to Grant that she, Lundquist, and Norman created the will. Appellant told Grant she signed Behrle's signature on the will and affixed Behrle's initials next to the signatures of Lundquist and Norman.

The trial court never instructed the jury that, based on the challenged evidence, the jury was to accept as conclusively established that Behrle's purported signature was forged and the will was not duly executed. The challenged evidence was, itself, evidence Behrle's signature on the will was forged but was not, itself, evidence appellant forged the signature. If the jury had viewed the challenged evidence as conclusively establishing appellant forged Behrle's purported signature, the jury would not have acquitted appellant on count 1.

Moreover, the jury acquitted appellant on count 1 but that merely meant the jury was not convinced beyond a reasonable doubt appellant forged Behrle's signature. The acquittal did not necessarily mean (1) the jury was not persuaded to a lesser standard of proof that appellant forged the signature, (2) the jury believed appellant did not forge the signature, or (3) the jury was not convinced beyond a reasonable doubt appellant signed Behrle's purported initials on the will's witness page. No prejudicial evidentiary error occurred. (Cf. *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Finally, appellant, asserting "defense counsel seems to have acquiesced to the admission of the probate court order," argues appellant received ineffective assistance of counsel to the extent her claims of error are not preserved for appellate review. We disagree. The record sheds no light on why appellant's trial counsel failed to object to the order, the record does not reflect said counsel was asked for an explanation and failed to provide one, and we cannot say there simply could have been no satisfactory explanation. (Cf. *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-268.) Indeed, for the reasons previously discussed, reasonably competent counsel could have concluded relevance and Evidence Code section 352 objections to the order would have been without merit. Appellant has failed to demonstrate she received ineffective assistance of counsel. (See *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

2. *Sufficient Evidence Supports Appellant's Convictions.*

Appellant claims insufficient evidence supports her convictions. She argues Lundquist and Norman were accomplices,[4] therefore, their testimony alone did not constitute sufficient evidence supporting appellant's convictions, and appellant argues there was no evidence, independent of said testimony, that tended to connect appellant with the crimes charged in counts 3 and 5. We reject appellant's claim.

Penal Code section 1111 states, in relevant part, "[a] conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . ." "To corroborate the testimony of an accomplice, the prosecution must present 'independent evidence,' that is, evidence that 'tends to connect the defendant with the crime charged' without aid or assistance from the accomplice's testimony. [Citation.] Corroborating evidence is sufficient if it tends to implicate the defendant and thus relates to some act or fact that is an element of the crime. [Citations.] ' "[T]he corroborative evidence may be slight and entitled to little consideration when standing alone." [Citation.]' [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 562-563.)

"Moreover, ' "only a portion . . . of the accomplice's testimony need be corroborated" ' [citation] and it is ' "not necessary that the corroborative evidence . . . establish every element of the offense charged." [Citations.]' [Citation.] It is only required that the evidence ' " 'tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [accomplice] is telling the truth.' " ' [Citation.]" (*People v. Miranda* (1987) 44 Cal.3d 57, 100.)

---

[4] The court instructed the jury that if the crimes of forgery and perjury by declaration were committed, Lundquist and Norman were accomplices to those crimes.

11

The Factual Summary sets forth pertinent facts from the testimony of Lundquist and Norman. Appellant does not expressly argue that that testimony, even if corroborated, was insufficient evidence supporting appellant's convictions. That is, there is no dispute the testimony of Lundquist and Norman constituted sufficient evidence supporting appellant's convictions if, independent of that testimony, there was slight corroborative evidence tending to connect appellant with the crimes charged.

Appellant herself effectively admitted to Grant that she, Lundquist, and Norman created the will. Appellant told Grant she signed Behrle's signature on the will and affixed Behrle's initials next to the signatures of Lundquist and Norman. Appellant's statements to Grant constituted the requisite slight corroborating evidence.

The fact appellant was acquitted on count 1 does not compel a contrary conclusion. That merely meant the evidence did not convince the jury beyond a reasonable doubt that appellant forged Behrle's purported signature. It did not mean the evidence was not the requisite slight corroborating evidence. " '[I]f evidence of another offense is otherwise admissible, the fact that the defendant was acquitted does not render the evidence inadmissible.' [Citation.]" (*People v. Vaughn* (1969) 71 Cal.2d 406, 420; accord, *In re Dunham* (1976) 16 Cal.3d 63, 67.)

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

JONES, J.[*]

We concur:

EDMON, P. J.

ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.