Filed 10/15/20  P. v. Foote CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C090372 |
| Plaintiff and Respondent, | (Super. Ct. No. S18CJR0006C) |
| v. | |
| DYLAN RUSSELL FOOTE, | |
| Defendant and Appellant. | |

FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, defendant Dylan Russell Foote was convicted in El Dorado County of corporal injury on a spouse or cohabitant and was sentenced to serve three years in state prison.  The court also issued a three-year domestic violence criminal protective order.  Nothing in the record indicates that defendant appealed the judgment.

In May 2018, defendant was released from prison and placed on three years' postrelease community supervision with various terms and conditions, including that he obey all laws.  Just two weeks after his release, the El Dorado County District Attorney

1

filed a petition to revoke defendant's community supervision alleging that defendant failed to obey all laws by violating the protective order.[1]  In June 2018, defendant admitted the violation and was sentenced to serve 150 days in the county jail; he did not appeal the court's order.  He was released from county jail in August 2018.

In November 2018, probation filed a second petition to revoke defendant's community supervision, alleging that he committed trespass and vandalism.[2]  Defendant admitted the vandalism violation and was reinstated on community supervision on the same terms and conditions as before.

In April 2019, probation filed a third petition to revoke defendant's community supervision, alleging that he twice tested positive for methamphetamine, that he failed to report to his probation officer as directed, and that he failed to obey all laws.  He was arrested on April 23, 2019, for willfully obstructing or delaying a peace officer, disorderly conduct, and trespassing.  Probation recommended that community supervision be revoked, that defendant serve 180 days in county jail, and that he be reinstated on community supervision.

The following month, in May 2019, defendant admitted the positive drug test and failure to report allegations, and the third allegation regarding new criminal offenses was dismissed.  On May 31, 2019, the court sentenced him to serve 180 days in county jail with 103 days stayed and credit for the remaining 77 days.  The court ordered him to enroll with probation in "MRT" counseling, engage in outpatient substance abuse

---

[1]     Defendant pled no contest to violating the protective order and was placed on three years' summary probation.

[2]     Defendant pled no contest to vandalism in exchange for 360 days in county jail; defendant was to serve 180 days of the sentence, with the remainder stayed pending successful completion of probation.  The trespass charge was dismissed.  He admitted that his vandalism conviction violated the terms of his community supervision release, but no additional time was imposed for the violation.

counseling at El Dorado Mental Health, enroll in community college, obtain employment, and reenroll in DUI school and a batterer's treatment program. He was released from custody on May 31, 2019. Defendant did not object to the sentence imposed based on Proposition 36, or otherwise appeal the court's order.

On June 28, 2019, probation filed a fourth petition to revoke defendant's community supervision, alleging that he failed to report to probation, that he left California without permission, and that he failed to obey all laws after being arrested for trespassing in Douglas County, Nevada. Defendant subsequently denied the allegations, and a contested hearing was set for July 2019.

At the contested hearing, El Dorado County Probation Officer Jorge Soriano testified that he supervised defendant, and that defendant failed to check in with probation on May 31, 2019, as ordered. He also testified that he received a police report from the Douglas County Sheriff's Department stating that defendant was arrested in a Nevada casino for trespassing on June 9, 2019, and that he was under the influence of MDMA; defendant did not obtain Soriano's permission before leaving the state. Defense counsel did not cross-examine Soriano. Following the hearing, the court found defendant violated his community supervision. After the court made its finding, defendant objected because he felt he had been misrepresented and that he had tried to have his defense counsel present more evidence. The court did not substantively respond to defendant's objection, but set the matter for sentencing on the violation.

In August 2019, the trial court ordered defendant to serve 180 days in jail in the case, consecutive to the 103 days previously stayed. The court originally awarded him 47 days of actual credit plus 46 days of conduct credit for 93 days of total credit. The court subsequently increased defendant's credit by two actual days (for time in custody after he finished his custody time in Douglas County before being transferred back to El Dorado County) to 49 days, plus 48 days of conduct credit for a total of 97 days of credit. Defendant timely appealed without a certificate of probable cause.

3

DISCUSSION

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant filed a supplemental brief raising numerous issues, which we consider below.

A

*Double Jeopardy*

Defendant first argues that using his Nevada trespassing conviction to establish a violation of his community supervision conditions violated double jeopardy. We disagree.

"The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that a person may not be twice placed 'in jeopardy' for the 'same offense.' " (*People v. Anderson* (2009) 47 Cal.4th 92, 103.) Double jeopardy "protects against a *second prosecution* for the *same offense* after conviction." (*People v. Sloan* (2007) 42 Cal.4th 110, 120-121.) The defendant bears the burden of demonstrating that double jeopardy applies. (*People v. Mason* (1962) 200 Cal.App.2d 282, 285.)

Here, defendant was not twice prosecuted for the same trespassing offense. Instead, it appears from the record that defendant was arrested for trespassing in Douglas County, Nevada, on June 9, 2019. He admitted the trespassing offense in Douglas County and was ordered to serve 10 days in jail with 30 days suspended. The Nevada trespassing arrest was then used to show that he failed to obey all laws as required by the terms of his community supervision at the contested revocation hearing in July 2019. Contrary to defendant's implicit contention, a community supervision revocation hearing, much like a parole or probation revocation hearing, is not a second criminal prosecution.

4

(See *In re Dunham* (1976) 16 Cal.3d 63, 69 [recognizing parole and probation revocation hearings do not constitute criminal prosecutions]; see also *People v. Osband* (1996) 13 Cal.4th 622, 710-711 [introduction of evidence during penalty phase of capital murder trial of facts underlying defendant's prior misdemeanor battery convictions, as opposed to evidence merely of fact of convictions, did not violate defendant's double jeopardy rights].) Nor is any term of confinement ordered as a sanction for violating community supervision a "sentence." (*People v. Murdock* (2018) 25 Cal.App.5th 429, 434.) " 'California law carefully distinguishes between *confinement* for parole or [community supervision] violations on the one hand, and traditional "*sentencing*" for criminal convictions on the other. [Citation.] These two areas are separate and distinct.' " (*Ibid.*)

Because nothing in the record shows defendant was convicted of trespassing in California for the same conduct underlying the Nevada offense, defendant was not twice tried and punished for the same offense. He has thus failed to show double jeopardy applies.

B

*Ineffective Assistance Of Counsel*

Defendant next contends he received ineffective assistance of counsel at the contested revocation hearing on the fourth petition. Defendant, however, has failed to meet his burden to show his counsel was ineffective.

To establish a claim of ineffective assistance of counsel, defendant has the burden of demonstrating that his counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms and he was prejudiced by that deficiency. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.) " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*Ibid.*)

5

"A defendant who raises the [ineffective assistance of counsel] issue on appeal must establish deficient performance based upon the four corners of the record." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) " 'If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Lopez*, *supra*, 42 Cal.4th at p. 966.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claims properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's act or omission].)

Based on the four corners of the appellate record, defendant has failed to carry his burden to establish that trial counsel provided inadequate representation at the contested revocation hearing. While it is true that defense counsel did not question the sole witness at the contested hearing, the record is silent as to the reason for counsel's tactical choice. In light of other evidence in the record showing defendant later admitted that he did not contact probation as he was ordered, that he went into a casino across state lines in Nevada, and that he was arrested for trespassing while there as alleged in the fourth petition to revoke, counsel could have reasonably concluded that questioning the probation officer would not have elicited any helpful information in defendant's favor. The fact that defendant was supposedly seeking a job in Nevada would have done nothing to defend against the allegation that defendant left the state without his probation officer's permission.

Defendant's claim that defense counsel told him defendant's case was the last case the attorney was handling in El Dorado County does not dictate a different result. Nothing in the record supports defendant's claim, and we will not consider facts provided

6

for the first time on appeal.  (See *People v. Pena* (1972) 25 Cal.App.3d 414, 421-422, disapproved on other grounds by *People v. Duran* (1976) 16 Cal.3d 282, 292.)

C

*Penal Code[3] Section 1389*

Defendant contends that while he was in custody in Douglas County, Nevada, he was denied access to a section 1389 form to request that California authorities file a detainer with the Nevada authorities pursuant to the interstate agreement on detainers to return him to California for sentencing on his community supervision violation.  He argues that denial of access to the form requires dismissal of the violation, or, at a minimum, his jail term for the violation should be concurrent to the 90 days he allegedly served in Douglas County.  We disagree.

"Penal Code section 1389 establishes a procedure for gaining control over an out-of-state prisoner." (*People v. Mahan* (1980) 111 Cal.App.3d 28, 33.)  The statute provides in relevant part:  "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ."  (§ 1389, art. III, subd. (a).)

Section 1389 "covers only situations where the defendant is returned for trial on untried indictments, informations, and complaints." (*People v. Mahan*, *supra*,

---

**3**      Further undesignated references are to this code.

111 Cal.App.3d at p. 34.) Defendant cites no authority, and we have found none, that provides a petition to revoke community supervision constitutes an indictment, information, or complaint on untried charges. Thus, defendant may not claim that California should have filed a detainer with Nevada authorities and returned him to California for sentencing on the fourth petition to revoke community supervision with the detainer.

D

*Judicial Bias*

Defendant contends Judge Suzanne Kingsbury was biased against him as evidenced by her alleged harsh treatment of him for his numerous community supervision violations. We disagree. Time after time Judge Kingsbury gave defendant an opportunity to straighten up and he failed again and again.

On appeal, we assess whether any judicial conduct or alleged bias was so prejudicial that it deprived a defendant of " 'a fair, as opposed to a perfect, trial.' " (*People v. Snow* (2003) 30 Cal.4th 43, 78.) While a defendant has a due process right to an impartial trial judge under the state and federal Constitutions, and is entitled to a fair trial in a fair tribunal before a judge with no actual bias against him or interest in the outcome of the case (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111), a trial court's numerous rulings against a party -- even when erroneous -- do not establish a charge of judicial bias, especially when they are subject to review (*id.* at p. 1112).

Here, nothing in the record shows Judge Kingsbury was biased against defendant. Defendant's contention that Judge Kingsbury *always* imposed the maximum term regardless of the nature of the violation is not shown by the record and is without merit. Rather than being unduly harsh with defendant, the record shows Judge Kingsbury tried to work with defendant to help him be successful on community supervision.

E

*Proposition 36*

Defendant contends the trial court erred in sentencing him to county jail rather than substance abuse treatment as required by Proposition 36 for his positive drug tests, which he admitted as alleged in the third petition.  Defendant has forfeited his claim.

Proposition 36 mandates that, as a general rule, a person who commits a nonviolent drug possession offense should be referred to drug treatment rather than jail. (§ 1210.1; *Gardner v. Schwarzenegger* (2009) 178 Cal.App.4th 1366, 1369-1371.) Section 3063.1, enacted as part of Proposition 36, requires drug treatment rather than incarceration for most parolees who violate their parole by committing a nonviolent drug possession offense.  Parole may be revoked for a first-time nonviolent drug possession offense only where the parolee poses a danger to the safety to others.  (§ 3063.1, subds. (a), (d)(1).)  While section 3455, applicable to community supervision, contains no such limitations as it authorizes revocation of community supervision and incarceration for up to 180 days for any violation of supervision conditions, including a nonviolent drug possession offense (§ 3455), courts have found that section 3455 may not be applied in a manner that is inconsistent with the treatment requirements of Proposition 36.  (See, e.g., *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 404; *People v. Armogeda* (2015) 233 Cal.App.4th 428, 433-436 [§ 3455 is unconstitutional to the extent that it amends the treatment of nonviolent drug possession offenders and permits incarceration under circumstances prohibited by Proposition 36 & § 3063.1].)

In this case, defendant did not object to the county jail term imposed on Proposition 36 grounds or the rule of *Armogeda*.  Nor did he timely appeal that order.  He cannot belatedly raise the issue for the first time in an appeal from the sentence imposed on the fourth petition, which did not involve a nonviolent drug possession offense.  (See, e.g., *People v. Byron* (2016) 246 Cal.App.4th 1009, 1013, fn. 3 [failure to raise Proposition 36 objection below waived argument on appeal]; see also *People v. Sanders*

9

(1995) 11 Cal.4th 475, 531 [purpose of rule requiring timely objection is to give the trial court the opportunity to cure alleged errors].)

F

*Due Process*

Defendant contends his due process rights were violated because his probation officer acted as "judge, jury, and executioner" in that he supposedly signed the warrant for his arrest on the fourth petition, was the only testifying witness at the contested community supervision hearing, and, after the trial court sustained the petition, interviewed him for a sentencing report, which he claims violated the procedures set forth in sections 3454 and 3455 and constituted a conflict of interest. We disagree.

Section 3454 generally provides that a supervising county agency shall establish a review process for assessing a person's program of postrelease supervision; the agency may determine additional appropriate conditions of supervision, such as electronic monitoring or rehabilitation and treatment services, and may determine and order appropriate responses to alleged violations, including intermediate sanctions or flash incarceration. (§ 3454, subds. (a)-(b).)

If the supervising agency has determined that intermediate sanctions as authorized by section 3454 are inappropriate, it must petition the superior court pursuant to section 1203.2 to revoke, modify, or terminate community supervision. (§ 3455, subd. (a).) The petition must contain a written report with information regarding the relevant terms and conditions, the circumstances of the alleged violations, the history and background of the violator, and any recommendations. (*Ibid.*) Revocation hearings must be held "within a reasonable time after the filing of the revocation petition." (§ 3455, subd. (c).) Upon finding that the person violated his or her conditions of community supervision, the revocation hearing officer may, among other things, return the person to community supervision with modified conditions, including a period of incarceration in a county jail not to exceed 180 days. (§ 3455, subds. (a), (d).) Under section 3455, an

10

officer employed by the supervising county agency may seek a warrant and a court may issue a warrant for that person's arrest. (§ 3455, subd. (b)(1).)

In this case, defendant's probation officer filed the fourth petition with the trial court on June 28, 2019, seeking to revoke his community supervision. The petition contained the required report detailing defendant's criminal history and background, the previous violations and sanctions imposed, the relevant terms and conditions of his release, the circumstances of the alleged violations, the reasons intermediate sanctions were no longer feasible, and a recommendation that defendant be committed to county jail for 180 days.

That same day, the trial court found probable cause to support revocation, preliminarily revoked defendant's community supervision, and ordered that a warrant be issued for his arrest. The court signed the arrest warrant on July 1, 2019.

Defendant was arrested three days later on July 4, 2019. On July 8, he waived arraignment on the fourth petition and denied the petition allegations. The trial court again found probable cause to support revocation. The matter was continued on the motion of the defense to July 26, 2019, for a contested revocation hearing. Defendant was represented by counsel at the contested hearing, and the trial court, after considering the evidence presented, sustained the fourth petition, finding defendant in violation of his community supervision conditions.

Thus, contrary to defendant's contention, his probation officer did not act as judge, jury, and executioner in revoking his community supervision based on the allegations contained in the fourth petition to revoke. Nor did his probation officer issue the warrant for his arrest. Instead, the record shows the revocation hearing occurred within a "reasonable time" after the filing of the revocation petition as required by section 3455, subdivision (c), that the matter was decided by a neutral trial judge, and that defendant's due process rights were not violated during the revocation process.

11

G

*Arrest*

Defendant cursorily alleges, without reasoned analysis or citation to the record, that he was arrested on a Native American historical site where, he believes, South Lake Tahoe police did not have jurisdiction to arrest him. Defendant does not develop the argument beyond this single sentence.

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Raye, P. J.

/s/
Hull, J.

12